JOHN H. WRONOWSKI *v.* REDEVELOPMENT AGENCY OF THE CITY OF NEW LONDON

NELSECO NAVIGATION COMPANY *v.* REDEVELOPMENT AGENCY OF THE CITY OF NEW LONDON

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued March 13—decision released May 13, 1980

*John P. Tedeschi,* with whom was *Eugene C. Cushman,* for the appellant (defendant in each case).

*H. Meade Alcorn, Jr.,* with whom were *William H. Champlin III, William W. Miner, Emmet L. Cosgrove* and *Suzanne D. Kitchings,* for the appellee (plaintiff in each case).

COTTER, C. J. The defendant appeals under General Statutes § 8-132 from a judgment rendered upon the trial referee's reassessment of damages and valuing of land and buildings taken as a part of a redevelopment project in New London. The referee, exercising the powers of the Superior Court, heard witnesses, viewed the property as well as the exhibits, and filed a report as required by statute, in which he found the total damages to be $710,000. The only issue pursued in this court is whether the referee, hereinafter referred to as the court, in determining the value of the property, erred in relying upon a finding of fact that: "The combination of the many unique characteristics of the plaintiffs' property and Shaw Cove and the special use to which the property has been put by the plaintiffs for a considerable period of time, substantially affect the value of the subject property"; and that such special use "is a factor which must be considered in determining a fair market value."[1] The defendant does not pursue in its brief or oral argument the claim assigned earlier that the foregoing finding was made without evidence. Nevertheless, we find it is fully supported by evidence. The defendant stressed in oral argument that the central issue before this court is whether "the uses by the plaintiffs are such that they satisfy the necessary criteria to enhance the value of the land substantially."

[1] Other issues raised in the assignment of errors have not been briefed or argued and are treated as abandoned. *Gebrian* v. *Bristol Redevelopment Agency,* 171 Conn. 565, 570, 370 A.2d 1055.

The court's findings pertinent and material to a consideration of a disposition of these cases are as follows: The plaintiffs John Wronowski and Nelseco Navigation Company, which is wholly owned by Wronowski, each owned a parcel of land which was taken by the redevelopment agency. The properties are located on the easterly side of Shaw Cove in New London, abut each other and are bounded westerly 886 feet by Shaw Cove and easterly by a railroad. Shaw Cove, consisting of approximately fourteen acres of water, is on the west side of the Thames River. The two parcels contain approximately 85,600 square feet and were partially manmade by filling in 1907. The plaintiffs acquired the premises with the water front about twenty years before the hearing in July, 1978, for use as a secure safe harbor and base for seagoing vessels and for the service, repair and maintenance of such seagoing vessels. The plaintiffs are the owners of eight seagoing motor vessels, the largest being 170 feet in length. During each season they are engaged in the business of ferry service for approximately 300,000 passengers and for automobiles and cargo between New London and Block Island, New London and Orient Point, Point Judith and Block Island, and New Bedford and Martha's Vineyard.

Shaw Cove and the subject property are close to the mouth of New London Harbor providing easy access to the ferry routes operated by the plaintiffs. Shaw Cove is practically landlocked and provides an emergency repair facility and a safe harbor where ferries may be repaired and refueled during the ferry season. During the winter season, when the ferry service is not maintained, the plaintiffs require a berthing and repair facility with deep

water mooring not affected by strong tides or storms and secure from violent weather. They are able to moor as many as ten seagoing vessels at their property, and have docked up to eight ferries at one time at the Shaw Cove facility.

The property in question includes buildings for a maintenance shop, welding shop, diesel repair shop, and carpenter shop, all used in connection with the plaintiffs' seagoing ferry business. The Cove, subject land, roadway and dockage at the plaintiffs' property make it possible for the plaintiffs to use large mobile cranes for handling heavy items such as engines and machinery which have been changed and repaired at the facility. They rely for repair and maintenance on downtown New London suppliers for parts and materials. The New London business district is three minutes from the plaintiffs' property by motor vehicle. This close proximity to suppliers is a significant advantage for the plaintiffs in their repair and maintenance operation.

The plaintiffs use or need to have available the entire water frontage they own at Shaw Cove for mooring, repairs and storage during the winter months. Because of its location, the property is uniquely protected from the effects of wind, tide and surge, and requires no dredging to maintain its depth which allows the maneuvering and berthing of large seagoing vessels.

The court also specifically found that the property in question is used "for a special use and this is a factor which must be considered in determining a fair market value." The cove and the property in question have been used by the plaintiffs for many years in the development of an extensive

nautical business. The testimony by the three appraisers who testified at trial demonstrated that the highest and best use of the subject property was its continued use as a repair and berthing facility as required by the plaintiffs.

There are no other properties in Connecticut, Massachusetts or Rhode Island which possess all or even a substantial number of the many features of the subject property, namely: (a) 886 feet of water frontage; (b) deep water at dockside; (c) docking facilities for seagoing ships; (d) maintenance-free location; (e) freedom from wind, surge, tide and wake; (f) land available for storage and maintenance; (g) ready access to downtown suppliers of materials and parts; (h) ready access to embarkation points for seagoing vessels; (i) available rail and highway facilities; (j) utilities, water and electricity available on the site; (k) security by reason of the railroad bridge and fence; and (1) unique refuge from storms, a "hurricane hole" where ships survived the worst hurricane in a century in 1938 while other seagoing vessels moored outside the cove were blown ashore or sunk.

Although the plaintiffs have acquired property in Montville, Connecticut in an effort to replace the property taken under eminent domain, the Montville site does not compare favorably in any respect with the premises at Shaw Cove. Temporary permits have been obtained from the corps of engineers but not from the Connecticut department of environmental protection for construction work on the facilities at Montville. No work or dredging has been undertaken and no permanent permits have been received for the Montville site.

The court found that the highest and best use for the subject property is the special business use to which it has been devoted by the plaintiffs for many years. Although the court from a tugboat viewed locations both north and south of Shaw Cove, none were found to be comparable to the plaintiffs' property which is unique in meeting the requirements of their business operation maintained over the years at the New London location. The court concluded that the total fair market value of the plaintiffs' property and buildings was found to be $710,000 less $155,000 previously deposited and paid by the agency.

The defendant redevelopment agency takes the position that the special business use of the land in the present case does not substantially enhance its value to a prospective purchaser interested in land with that use because the use is so limited, and suggests that the issue presented is " 'whether or not the owner's special uses add to or increase the market value.' 4 Nichols, Eminent Domain, 3rd Ed., § 12.32 [2]." The agency draws a distinction between (1) uses which enhance value and (2) loss of business uses which are not compensable and intimates that the evidence and proof in this case, although described as proving enhanced value, in fact erroneously supports an award for loss of business use.

When real property is condemned the general rule is that nothing should be included in the award in the way of compensation for the loss of a business conducted thereon unless specifically authorized by statute; however, where an ongoing profitable business is conducted on the land, such a use should be considered if the use is a factor in establishing

market value because a willing buyer might offer more for the property since such a business use would indicate the suitability of the location for a similar enterprise. *Feigenbaum* v. *New Britain Housing Site Development Agency,* 164 Conn. 254, 258–60, 320 A.2d 824; *Housing Authority* v. *Lustig,* 139 Conn. 73, 75, 76, 90 A.2d 169; see *Gebrian* v. *Bristol Redevelopment Agency,* 171 Conn. 565, 575, 370 A.2d 1055.

The defendant relies upon such cases as *Gebrian* v. *Bristol Redevelopment Agency,* supra, and *Seferi* v. *Ives,* 155 Conn. 580, 236 A.2d 83, appeal dismissed, 391 U.S. 359, 88 S. Ct. 1665, 20 L. Ed. 2d 640. In each of those cases the court found that a special use of the property which would enhance the market value was absent and thus would have no effect on its market value in negotiations between a buyer and a seller. The present case is clearly distinguishable on the facts which plainly support the judgment rendered.

It is the court's duty to award just compensation to an owner whose property is taken for public use. The usual measure of just compensation is the fair market value or the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors, including the highest and best or most advantageous use, weighing and evaluating the circumstances, the evidence, the opinions expressed by the witnesses and considering the use to which the premises have been devoted and which may have enhanced its value. *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 365, 429 A.2d 890; *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 299, 426 A.2d 280; *Connecticut Printers,*

*Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 410–11, 270 A.2d 549; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 102, 230 A.2d 9. See, E. Pollack, "The Supreme Court of Connecticut 1968–1969, Eminent Domain, Special Use," 45 Conn. Bar Journal 40, 64 (1971). Put in another way, the rule is that the trier must take into consideration everything by which value is legitimately affected including those factors which a willing buyer and a willing seller would consider in fairly and advantageously negotiating an agreement. *Mazzola* v. *Commissioner of Transportation,* 175 Conn. 576, 582, 402 A.2d 786; *Connecticut Printers, Inc.* v. *Redevelopment Agency,* supra, 411.

The court correctly considered the existence on the plaintiffs' property of an established special business use combined with the many unusual characteristics of the property as factors which would enhance its fair market value. Such factors are indicative of the highest economic use to which the property may be put and would have weight in the minds of a willing seller and an able and ready buyer in fairly and advantageously negotiating an agreement. *Housing Authority* v. *Lustig,* supra, 76–79; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43–44, 255 A.2d 836.

Two appraisers, called to testify for the plaintiffs, placed property values of $314,750 and $860,000 respectively; another appraiser, called by the defendant, testified to a lesser valuation of $190,000. The trier in a condemnation case may reach its own conclusion as to value by weighing the opinion of the appraisers, the claims of the parties in view of all the circumstances in evidence bearing on value and his own general knowledge of the elements

which affect the value; and he may select the most appropriate method of valuation under the facts properly found by him. *Slavitt* v. *Ives*, 163 Conn. 198, 209, 303 A.2d 13; *Moss v. New Haven Redevelopment Agency*, 146 Conn. 421, 425, 151 A.2d 693. From the facts found by the court it could reasonably conclude that the fair market value of the land and buildings was $710,000.

There is no error.

In this opinion the other judges concurred.