ROBERT WELSH ET AL. *v.* INDEPENDENT BANK AND TRUST CO.

FRIEDA SCHNEIDER, EXECUTRIX (ESTATE OF ABRAHAM SCHNEIDER) *v.* INDEPENDENT BANK AND TRUST CO.
(2447)

TESTO, HULL and DUPONT, Js.

Argued October 6—decision released November 22, 1983

*John W. Barnett,* with whom was *Bennett J. Bernblum,* for the appellant (defendant in both cases).

*Steven R. Humphrey,* with whom were *Raymond P. Schneider* and, on the brief, *Jane H. Frederick,* for the appellees (plaintiffs in each case).

TESTO, J. This matter arises out of the merger of the Willimantic Trust Company (Willimantic) with the Norwich State Bank and Trust Company (Norwich). The plaintiffs brought their actions under General Statutes § 33-374 (g) and asked the court to determine the fair value of the Willimantic stock as of December 30, 1980, the day prior to the date on which notice of the proposed merger was mailed to the stockholders.

The proposed merger, with Willimantic to be the resulting bank, was approved by stockholders of both banks at special meetings on February 19, 1981. At its annual meeting on April 30, 1981, its stockholders voted to change its name to the Independent Bank and Trust Company. Independent, therefore, is the named defendant in these cases.

Independent sent notifying letters to the plaintiffs offering them $76 per share for the shares of stock the plaintiffs demanded to be purchased in accordance with General Statutes §§ 33-374 (b) and 36-92 (5). The price of $76 per share was deemed by the bank to be the fair market value of the stock as of the day prior to the date on which notice of the proposed merger was mailed. The plaintiffs refused to accept the offer of $76 per share, complied with all statutory conditions precedent to a judicial determination of the fair value of their shares and then instituted this litigation.

The history and growth of the Willimantic Bank is undisputed. The testimony of one of its directors at the trial stated that it has been a very successful bank and one of the most successful in Connecticut. This statement was corroborated by the appraisal report of Keefe, Bruyette and Woods, Inc. The bank was characterized as being an above-average performer, having abundant capital, good asset quality, but under reserved.

The shares of Willimantic were not listed on any stock exchange. The shares were bought and sold by brokers as principals or agents and by individuals negotiating between themselves. The shares of stocks that were sold between January 12, 1976, and April 21, 1981, are recorded on the bank's stock transfer book and are listed in exhibit A. Between the dates of October 7, 1980 (the date immediately prior to the first newspaper announcement about the proposed merger) and December 30, 1980, exhibit A lists transfers at prices between $100 and $105.50 per share. In addition to this evidence concerning recent transfer prices, there was evidence introduced concerning the "bid price" for Willimantic.

The defendant contends that the trial judge, in setting the value of the stock at $105 per share, exclusively relied on the "market value" approach in finding what the "fair value" of the shares of stock was under General Statutes § 33-374 (g). Its claim that other measures of value are used in other jurisdictions and should have been used in this case, namely, earnings value, book value and dividend yield is the basis of this appeal.

The basic concept of value under the appraisal statute, § 33-374 (g) of the General Statutes, is that the stockholder is entitled to be paid for that which has been taken from him, viz, his proportionate interest in a going concern. This is the true or intrinsic value of his stock which has been taken by the merger.

General Statutes § 33-374 (g) does not state what measuring stick to use to determine the "fair value" of stocks. It gives to the trier of fact the authority to "determine the fair value of the shares of the shareholders entitled to payment therefor . . . ."

In determining fair value, a court may rely on a legally recognized measure of value which is supported by the subordinate facts. No single method of valuation will

control in all cases. See *Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13 (1972). It is within the discretion of the trier of fact to "select the most appropriate method of valuation under the facts properly found by him." *Wronowski* v. *Redevelopment Agency,* 180 Conn. 579, 587, 430 A.2d 1284 (1980). Valuation is a matter of fact to be determined by the trier's independent judgment of what is just compensation. Thus, valuation rests largely within the discretion of the lower court. *Endicott Johnson Corp.* v. *Bade,* 37 N.Y.2d 585, 588, 376 N.Y.S.2d 103, 338 N.E.2d 614 (1975).

Where General Statutes § 33-374 (g) gives the trier of fact the right to determine the fair value of stocks and where the trier bases his judgment on supportive and reliable evidence, he may select a legally recognized measure of value (market value) in order to determine the fair value of shares of stock in accordance with the statute as provided. We do not believe that the trial judge abused his discretion in finding as he did.

There is no error.

In this opinion the other judges concurred.