HELEN HENSLEY *v.* COMMISSIONER OF
TRANSPORTATION
(13586)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued February 1—decision released May 9, 1989

*John R. FitzGerald,* with whom, on the brief, was *Mary E. Holzworth,* for the appellant (plaintiff).

*Michael J. Lombardo,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellee (defendant).

ARTHUR H. HEALEY, J. In this appeal, the plaintiff challenges the damages that she was awarded in connection with the defendant's condemnation of her property for highway reconstruction purposes. This appeal from a trial referee's reassessment of the commissioner of transportation's original assessment of damages involves three claims of error: (1) that the trial referee erred in failing to view the condemned property; (2) that the trial referee erred in failing to consider the unique characteristics and special use to which the property had been put; and (3) that the trial referee improperly admitted certain evidence. We find no error.

A review of the record reveals the following. The condemned property is located on River Street in the town of Waterford. The property is located just south of Route 156 and is divided into two parcels by River Street, which runs southerly from, and perpendicular to, Route 156. The smaller of the two parcels is approximately .24 acres in size, with 200 feet of frontage on the Niantic River, and the larger parcel, which is located immediately across River Street from the smaller parcel, is approximately .82 acres. Improvements on the property include a mobile home that the

plaintiff occupied, a storage building, formerly a fish market, that is in fair condition, two small sheds that are in poor condition, and a cooler building that is in fair condition. The property is serviced by two septic systems and has two docks on the Niantic River. According to the plaintiff, the larger property has an unpaved area on which seventy-five to one hundred cars can be parked.

In addition to residing at the condemned property, the plaintiff had operated a head boat fishing business from the location. The trial court specifically found that the plaintiff's property "was being used as the site of a party fishing boat operation." The plaintiff docked her sixty-five foot vessel, the *Black Hawk*, at the docks jutting from her property and ran two fishing trips daily from mid-April to October 31. Each trip could accommodate up to seventy-six persons and each patron would spend between $15 and $40 per trip, according to the plaintiff. In 1987, the plaintiff had a net income of approximately $55,000 from this business. The trial referee found that the "highest and best use of the property would be the continuation of the present use."

The date of the taking was September 25, 1987. At that time, the state paid the plaintiff $416,000, the amount of the department of transportation's assessment of damages.

In her action for reassessment of the damages before the trial referee, pursuant to General Statutes § 13a-76,[1] the plaintiff introduced the testimony of John B.

---

[1] General Statutes § 13a-76 provides: "APPEAL TO SUPERIOR COURT. REAS-SESSMENT OF DAMAGES OR BENEFITS BY TRIAL REFEREE. Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and said court or such judge, after caus-

Flint, a real estate appraiser. Flint testified that he estimated the value of the property at $695,000 as of the taking date. He arrived at this figure by using a comparable sales analysis to value the land at $624,000, and by using a cost approach analysis to value the improvements at $71,000.

The state's appraiser, Edgar Russ, testified that the value of the condemned property as of the taking date was $437,000. Russ valued the improvements at $46,500.[2] Both appraisers agreed that the highest and best use of the property was its continued use as the base of operations for a head boat fishing business.

After hearing the testimony of the experts and testimony from the plaintiff on May 23, 1988, the trial referee issued a memorandum of decision on June 13,

ing notice of the pendency of such application to be given to said commissioner, shall appoint a state trial referee to make such reassessment of such damages or such benefits. Such trial referee, having given at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and said commissioner, shall view the land and take such testimony as such trial referee deems material and shall thereupon reassess such damages and benefits so far as they affect such applicant. If the amount of the reassessment of such damages awarded to any such property owner exceeds the amount of the assessment of such damages by the commissioner for such land, such trial referee shall award to such property owner such appraisal fees as such trial referee determines to be reasonable. If no appeal to the appellate court is filed within the time allowed by law, or if one is filed and the proceedings have terminated in a final judgment finding the amount due the landowner, the clerk shall send a certified copy of the assessment of the commissioner and of the judgment to the comptroller, who shall, upon receipt thereof, draw his order upon the treasurer in favor of the landowner for the amount due him as damages. The pendency of any such application for reassessment shall not prevent or delay the layout, extension, alteration, widening, change of grade or other improvement of any such highway. As used in this section, a trial referee means a referee appointed pursuant to subdivision (1) or (2) of subsection (a) of section 52-434 and designated a trial referee pursuant to subsection (b) of said section."

[2] Russ also used comparable sales analysis to value the land and cost approach analysis to value the improvements. Although the condemned property is divided into two parcels by River Street, both appraisers valued the property as one unit.

1988. In that memorandum, the trial referee stated: "From the evidence, the Court concludes that the fair market value of the premises at the time of taking to be $461,000. The plaintiff has been paid $416,000. Judgment may enter for the plaintiff to recover $35,000, the balance of the award, together with interest from September 25, 1987, plus costs and expenses as follows: Appraiser, John B. Flint, $3,500." In a corrected memorandum of decision, the trial referee stated: "From the evidence, the Court concludes that the fair market value of the premises at the time of taking to be $451,000. The plaintiff has been paid $416,000." Apparently, this corrected memorandum was to correct the discrepancy between the value of the property and balance due under the original memorandum of decision. The plaintiff appealed the trial referee's decision to the Appellate Court and we transferred the case to this court pursuant to Practice Book § 4023.

I

The plaintiff's first claim of error is that the trial referee erred in failing to view the condemned property as required by General Statutes § 13a-76. Additionally, the plaintiff claims that she did not waive that requirement. Although we agree with the plaintiff that the viewing requirement is mandatory, we disagree with her contention that she did not waive the requirement.

The only discussion of the view requirement at trial appears on the first transcribed page of the trial proceedings. After the parties stipulated that the taking date was September 25, 1987, the trial referee declared, "I do not intend to view the premises, because I'm familiar with the area. I've had a number of—," to which the plaintiff's counsel interrupted and said, "Well, Your Honor, this is a rather —it's a business that's been taken on the river; and my client would like it viewed." The trial referee responded by saying,

"Well, I'll hear the evidence. If I decide that it's necessary, I'll see it." Aside from a comment by the trial referee later that he had not seen the property since the time that there was a fish market there, this exchange is the only discussion during the trial relevant to the plaintiff's first claim of error.

General Statutes § 13a-76 provides that in a reassessment appeal before a trial referee, the referee "shall view the land." In the absence of contrary legislative intent, we construe the term "shall" as imposing a mandatory requirement. *Hughes* v. *Bemer,* 200 Conn. 400, 402–403, 510 A.2d 992 (1986); see *Lo Sacco* v. *Young,* 210 Conn. 503, 507, 555 A.2d 986 (1989); cf. *Tramontano* v. *Dilieto,* 192 Conn. 426, 433-34, 472 A.2d 768 (1984). The defendant does not offer, nor have we found, any indication of contrary legislative intent that would require us to construe "shall" other than as mandatory in this case. Our determination that the view requirement under General Statutes § 13a-76 is mandatory, however, does not end our inquiry. Although mandatory, the requirement can be waived. *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965).[3]

In general, federal and state constitutional and statutory rights can be waived. See, e.g., *Johnson* v. *Manson,* 196 Conn. 309, 324, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986); *Grecki* v. *New Britain,* 174 Conn. 200, 201–202, 384 A.2d 372 (1978). Waiver is the volun-

---

[3] We note that " '[w]e have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact supplemental evidence. . . .' " (Citations omitted.) *Birnbaum* v. *Ives,* 163 Conn. 12, 20, 301 A.2d 262 (1972); see also *White Oak Excavators, Inc.* v. *Burns,* 172 Conn. 478, 484, 374 A.2d 1097 (1977); *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965).

tary, knowing and intelligent relinquishment of a right or privilege. See *State* v. *Wilson,* 199 Conn. 417, 443, 513 A.2d 620 (1986). " 'Waiver does not have to be express, but "may consist of acts or conduct from which waiver may be implied. *Andover* v. *Hartford Accident & Indemnity Co.,* 153 Conn. 439, 445, 217 A.2d 60 [1966]. In other words, waiver may be inferred from the circumstances if it is reasonable to do so. *DiFrancesco* v. *Zurich General Accident & Liability Ins. Co.,* 105 Conn. 162, 168, 134 A. 789 [1926]." *Breen* v. *Aetna Casualty & Surety Co.,* [153 Conn. 633, 646, 220 A.2d 254 (1966)] (dissenting opinion).' *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 562, 316 A.2d 394 (1972)." *Loda* v. *H. K. Sargeant & Associates, Inc.,* 188 Conn. 69, 76, 448 A.2d 812 (1982). "Waiver is a question of fact for the trier." Id. The individual conduct of both parties is relevant in determining whether a waiver has occurred. See *Snow* v. *Calise,* 174 Conn. 567, 573, 392 A.2d 440 (1978). Because waiver is a factual issue, we must determine whether the trial referee's implied finding that the view requirement had been waived was "clearly erroneous in view of the evidence." Practice Book § 4061; *Temple* v. *Meyer,* 208 Conn. 404, 407, 544 A.2d 629 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In this case, we find that the trial referee's decision not to view the condemned property was not clearly erroneous. Following the referee's statement indicating that he did not intend to view the land, the plaintiff's counsel simply stated that his client would like it viewed. The referee then alternatively suggested that he would hear the evidence and then if he decided that viewing the property was necessary, he would do so. The plaintiff's counsel did not respond to the trial referee's statement. Thus, it was reasonable for the trial referee to infer from the plaintiff's silence that she

acquiesced to his approach to viewing the property. Furthermore, the plaintiff did not renew her request to have the property viewed during the trial. She had a prime opportunity to do this when the referee stated that he had not seen the property since the time that there was a fish market on it, but she did not.

Similarly, at the closing of the trial and after both parties had rested, the trial referee said: "I'll take the papers. You want to argue?" Mr. Fitzgerald, the plaintiff's counsel, replied: "I have nothing to—I think, Your Honor, the reports pretty much speak for themselves. I think His Honor has seen and heard Mrs. Hensley and Mr. Flint [plaintiff's appraiser]." While this again presented the plaintiff with the opportunity to persist and bring home to the trial court her present claim on the viewing of the property, nothing was said. The defendant's counsel made no comment at that time. The plaintiff never took any exception to the trial court's stated position on a view of the property.[4] It is apparent on this record that the defendant's counsel acquiesced in the trial court's position. From this evidence, it was reasonable for the trial referee to find, under all of the circumstances, that the plaintiff had waived the mandatory viewing requirement, and thus his ruling was not clearly erroneous.[5]

---

[4] There were no pretrial or posttrial briefs filed by either party in this case "discussing the issues in the case and the factual or legal basis upon which they ought to be resolved." Practice Book § 285A. This Practice Book rule further provides: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim." This was not done.

[5] We need not address the plaintiff's contention first made at oral argument that the view requirement is a constitutionally imposed evidentiary requirement. See *Roche* v. *Fairfield*, 186 Conn. 490, 505 n.14, 442 A.2d 911 (1982); see footnote 4, supra.

## II

The plaintiff's second claim is that the trial referee erred in determining the value of the condemned property because he did not take into consideration the unique characteristics of the property and the special use to which the property had been put. We disagree with the factual basis of the plaintiff's claim.

We do not dispute the plaintiff's claim that in assessing the value of property being taken by eminent domain, "the trier must take into consideration everything by which value is legitimately affected." *Wronowski* v. *Redevelopment Agency,* 180 Conn. 579, 586, 430 A.2d 1284 (1980); *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 299, 426 A.2d 280 (1979); *Altman* v. *Hill,* 144 Conn. 233, 240, 129 A.2d 358 (1957). This consideration includes "the existence on the plaintiff['s] property of an established special business use combined with the many unusual characteristics of the property as factors which would enhance its fair market value." *Wronowski* v. *Redevelopment Agency,* supra; *Feigenbaum* v. *New Britain Housing Site Development Agency,* 164 Conn. 254, 258, 320 A.2d 824 (1973). Our dispute with the plaintiff's claim, however, centers on her factual assertion that the trial referee did not consider her special use of the property. We note in passing that despite this claim, the plaintiff did not seek any articulation concerning it. See Practice Book § 4051.

The validity of this factual claim is again governed by the "clearly erroneous" standard of review. Practice Book § 4061; *Temple* v. *Meyer,* supra; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. The plaintiff claims that "despite the uncontradicted testimony and evidence presented to the Court regarding the unique characteristics and special use of the property, the Trial

Referee fails to take into account these factors in reaching his determination of value. The Court simply makes the following broad based conclusion: 'From the evidence the court concludes that the fair market value of the premises at the time of the taking to be $461,000.00.' " The plaintiff's factual assertion, however, is incorrect.

A review of the trial transcript reveals that the trial referee explicitly recognized the special nature of the plaintiff's business operation on her property. In cross-examining Russ, the state's appraiser, the plaintiff's counsel inquired as to whether Russ considered the plaintiff's use of the property in arriving at his appraisal. The following exchange between the plaintiff's counsel and the court then occurred: "The Court: Are you claiming the return on the—her income from the property as high?

"Mr. Fitzgerald: I'm claiming it's a speciality, Your Honor, and the Court has got to —

"The Court: *It's a speciality,* but it's not too high for—considering the fact that she puts in—

"Mr. Fitzgerald: Well, she gets free rent too, Your Honor. That's worth something.

"The Court: Well, she has the mobile home there.

"Mr. Fitzgerald: Free rent. All her taxes are paid.

"The Court: Out of her own pocket. It's an individual entity, however.

"Mr. Fitzgerald: Yes, it's sole proprietorship.

"The Court: So, it doesn't make any difference how she treats it.

"Mr. Fitzgerald: Well, I don't—

"The Court: But she's not making a lot of money there, \$55,000 for an investment of 400 according to the last appraisal which Mr. Russ has, \$437,000, isn't exactly a lot of money for the—considering she puts—

"Mr. Fitzgerald: \$55,000 at 432 that's—that's better than 12 percent, you can't get that across the street.

"The Court: Well, that's debatable.

"Mr. Fitzgerald: Well. All right, in any event." (Emphasis added.)

This discussion indicates that, contrary to the plaintiff's assertions, the trial referee did indeed take into consideration the unique characteristics and special use of the plaintiff's property; it appears, however, that he disagreed with the plaintiff's position on the importance of the special use.

Significantly, in its memorandum of decision, the trial referee also noted that the property "was being used as the site of a party fishing boat operation," that the "party boat is 65 feet in length and makes two trips a day during the summer," and that both appraisers "agreed that the highest and best use would be to continue as its present use." The trial referee himself made the declarative statement in its memorandum that "[t]he highest and best use of the property would be the continuation of the present use." The referee's statement in his memorandum of decision, "[f]rom the evidence, the Court concludes . . . " incorporates these findings. Because we conclude that the trial referee did consider the plaintiff's special use, his decision in this regard certainly was not clearly erroneous.[6]

---

[6] " 'It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly.' *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.*, 194 Conn. 400, 407, 480 A.2d 552 (1984); *Giammattei* v. *DiCerbo*, 135 Conn. 159, 162, 62 A.2d 519 (1948). Rather,

## III

The plaintiff's final claim is that the trial referee erred in admitting four pages of the state's appraisal report. Again, we disagree.

In order for an error in an evidentiary ruling to be a reversible error, the court's ruling " 'must be both wrong and harmful.' " *Rokus* v. *Bridgeport,* 191 Conn. 62, 70, 463 A.2d 252 (1983), quoting W. Maltbie, Conn. App. Proc. § 23; *Saphir* v. *Neustadt,* 177 Conn. 191, 201, 413 A.2d 843 (1979). When there is a claim of inadmissibility based on irrelevancy, the claimant has the burden of showing that the ruling was both wrong and harmful. *Saphir* v. *Neustadt,* supra, citing *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21, 118 A.2d 798 (1955); *Senderoff* v. *Senderoff,* 133 Conn. 300, 303, 50 A.2d 422 (1946); W. Maltbie, supra.

In the present case, the plaintiff objected to pages nineteen through twenty-two of the state's appraisal report on the ground that those pages contained data about land sales that were not comparable to the plaintiff's property. The plaintiff claimed that they were contained in the report "simply to get a low figure." Russ claimed that he put them in the report because one of the sales involved property adjacent to that of the plaintiff and the other involved property 300 feet away from the plaintiff's land. The trial referee decided to admit them "as informational only," and he advised the plaintiff's counsel that he could develop during cross-examination whether Russ used the figures in his appraisal.

we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles. See *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 481, 493 A.2d 874 (1985); *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* supra, 407–408." *Rosenblit* v. *Danaher,* 206 Conn. 125, 134, 537 A.2d 145 (1988).

In her brief, the plaintiff does not claim that the trial referee considered these informational sales in reassessing damages. Furthermore, at oral argument, the plaintiff conceded that there was no indication that the challenged information was used in the referee's determination. Therefore, regardless of whether the evidence was properly admitted, there is no claim of harm and thus the plaintiff has failed to carry her burden of proof on this claim.[7]

There is no error.

In this opinion the other justices concurred.

---

[7] We note that the trier has broad discretion in determining the admissibility of evidence on relevancy grounds. *State* v. *Higgins,* 201 Conn. 462, 470, 518 A.2d 631 (1986), citing *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980).