[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a statement of compensation in the amount of $130,000.00 filed with this court on March 19, 1990 by the Town of Chaplin, hereinafter the Plaintiff in an eminent domain proceeding concerning certain premises located within said Town and being more particularly hereinafter described. The plaintiff will use the site for construction of an elementary school. This matter has been referred to the undersigned State Trial Referee.
The plaintiff has taken by law property of the Estate of George A. Landeck, hereinafter the Defendant, which is located on the west side of Palmer Road between Ridge Road and North Bedlam Road in said Town of Chaplin. The executor of the defendant's estate is David C. Treiber.
On or about May 17, 1990 Robert Kirk Walsh, claiming to be the sole beneficiary of the defendant estate, filed a separate appeal from the statement of compensation, docketed as file No. 223C in this court. Because the property in question was the subject of both lawsuits, the cases have been consolidated for trial, and the decision of this Court encompasses both matters.
The property in question is more particularly located in the west center section of the Town of Chaplin approximately one mile west of Route 198 and one and one half miles east of Route 89. It is near the center of Town and is approximately one and one half miles from the town hall on Route 198. The parcel contains 23.5 acres, being one half of a tract of land owned by the defendant at this location. It has a frontage of 700 feet on the westerly side of Palmer Road and has an average depth of approximately eleven hundred feet. The frontage is at road level with a gradual rise to the center of the parcel and thereafter a slope down to the vicinity of Stonehouse Brook. The land is almost completely covered with trees and brush. The soil for the most part consists of very fine sandy loam which under normal circumstances has good percolation. However, because of the contemplated use of the parcel as a school, an onsite septic system will be required. Electricity and telephone are available to the site, CT Page 4624 but an onsite well will be needed to provide water. There are little or no wetlands on the site. There are no improvements on the premises. It may be necessary to widen a portion of Palmer Road when the school is constructed.
The premises were viewed by the court in company with counsel for both parties on December 10, 1990.
The surrounding area is rural in character, consisting of single family homes set on large tracts of farmland or woodland. The general area, including the captioned premises, is in a RA residential zone, allowing for single family development on two acre lots with a minimum frontage of two hundred feet. Schools are allowed under Section 5.2A5 of the Chaplin Zoning Regulations.
The Town of Chaplin lies on the westerly boundary of Windham County immediately south of the Towns of Ashford and Eastford, west of Hampton, and north of Scotland and Windham. It has a land area of 19. 8 square miles and had a population of 1870 people in 1985. It is a rural agricultural town with few commercial establishments.
A detailed account of the search of the town for an elementary school was given by Charlotte Shead, chairperson of the Town Building Committee. She testified that the Towns requirements for any potential site were that it be neither wet nor rocky, be near the center of town, and be economically sound for the town to acquire. She said that the committee had looked at twenty parcels, finally narrowing it down to file, including a parcel near the town hall known as the Joshua Trust tract and the captioned premises. Although the first choice of the committee was the Joshua Trust parcel, many residents opposed this selection because it would require taking a portion of additional land from town hall property. In part to avoid controversy but mostly because it too fulfilled all of the town's requirements, the committee selected the defendant's parcel which was the second choice of the school architect. On July 20, 1989 at a special town meeting the choice of the building committee was approved, although not unanimously.
A. Pete Dallaire, a qualified appraiser who has been engaged in that business for seventeen years, conducted two appraisals of the land in question for the Defendant, the first on January 29, 1990 and the second on October 11, 1990. In both appraisals he used the market data approach. In his first appraisal he stated that the highest and best use of the property would be a school site and he valued this parcel at $270,000.00 or at $11,500.00 per acre at the time of taking. He added that if the town were not to select this site, its highest and best use would there be as a residential subdivision, in which case its value would diminish. In particular he stated that "the value increased CT Page 4625 because the town wanted': the land as a school". "This is not an arm's length transaction. It is a condemnation, not a sale," and finally "the selection of the property as a school increases its value". In arriving at his opinion of value he used as comparable tracts in the Towns of Canterbury, Colchester and Lebanon where in all cases the land was acquired for school purposes. In his second appraisal he added as comparable sites in the Towns of Brooklyn and Plainfield where too the land was sought for either school or recreational purposes. He reiterated his conclusion as to value and cost per acre for the property.
James N. Platt, M.A.I. who has been engaged as a professional real estate appraiser for about twenty-five years, appraised the subject parcel for the plaintiff on two occasions, the first on March 2, 1989 and the second on October 17, 1990. He too employed the market data approach in evaluating the property. He concluded that the highest and best use of the land would be for residential development, but that it could also be used for municipal purposes such as the proposed school. He valued the property at $130,000.00 or $5,500.00 per acre at the time of taking. He testified that the value of the land would not increase if it were used as a school and that the price would be the same whether used for school or for residential purposes. All of his comparables involved similar rural acreage situated in the Town of Chaplin. One of the sales occurred on Palmer Road.
The general provisions of law applicable to the acquisition of land by a government agency through condemnation are found in two cases, the first Wronowski V. Redevelopment Agency 180 Conn. 579
(1980) and the second Minicucci v. Commissioner of Transportation211 Conn. 382 (1989).
In Wronowski (p. 585) our Supreme Court stated "It is the Court's duty to award just compensation to an owner whose property is taken for public use. The usual measure of just compensation is the fair market value or the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors, including the highest and best use, weighing and evaluating the circumstances, the evidence, the opinions expressed by witnesses and considering the use to which the premises have been devoted and which may have enhanced it's value. "
In Minicocci (p. 384) our Supreme Court, in quoting Mazzola v. Commissioner 175 Conn. 576, 581-2 (1978) stated "the' fair market value' is the price that a willing buyer would pay a willing seller, based on the highest and best use of the land assuming, of course, that a market exists for such optimum use.
With these basic principles as background, this Court addresses CT Page 4626 what it perceives to be the pivotal issue in this matter, namely, whether the captioned premises may have one value if utilized for the purpose for which they were condemned, i.e. a school, and a different, and lesser, value as a residential subdivision if the plaintiff chose not to use the site.
In 4 Nichols Eminent Domain 3d Ed at 12.21 it is stated that "The just compensation to which an owner is entitled when his property is taken by eminent domain is regarded in law from the point of view of the owner and not the condemnor. In other words, just compensation in the constitutional sense is what the owner has lost, not what the condemnor has gained. The fact that the particular parcel is required for purposes of the condemnor does not, ordinarily, add to the value thereof. The general rule forbids consideration of the effort of the proposed project upon the value of the property taken."
Again, in 1 Orgel Valuation under Eminent Domain (2d Ed) at 81, in quoting United States v. Chandler-Dunbar Co. 229 U.S. 53,81, 33 S. CT 667 it was stated "The value of the property to the government for its particular use is not a criterion. The owner must be compensated for what is taken from him, but that is done when he is paid its fair market value for all available uses and purposes. "And further along(p. 353) it was said "Indeed, so far as we are aware, the Supreme Court has never conceded that the special value of a property for the taker's uses should even be considered, except in so far as it may be relevant to the determination of fair market value."
Finally, in 17 Am. Jur.2d Eminent Domain 282 pp. 76, 77 the rule of law concerning this issue is set forth as follows: "It is fundamental that the value of the land taken to the party taking it is not the test of what should be paid, nor should the fact that the land is desired or needed for a particular public use he considered where it is taken for that use. Thus, it is generally recognized that the value of the land per the particular use for which it is sought to condemn it, as its value to the taker because of its peculiar adaptability for that use, or because of his needs and necessities, or because of its strategic location makes it desirable or indispensable for this purposes, or the fact that it would cost him more to appropriate other lands for his use, or the benefits accruing to him from the land, are not tests of the compensation to which the owner is entitled in condemnation proceedings. It is the value to the owner, or loss caused to him, and not the value or gain to the condemnor, that is to be taken into consideration. The necessities of the public or of the party seeking to condemn land cannot be taken into consideration in fixing its value. Therefore, as a general thing, the enhanced value due to the use for which the land was appropriated will not be included in the measure of compensation therefor." CT Page 4627
This court believes that the statements from the above authorities represent a reasonable and rational view of the law pertaining to the overriding issue in this case and concludes that the land condemned by plaintiff can have but one fair market value, whether it be used for a school or for a residential subdivision. While defendant's appraiser admitted that the tract in question, if used for school purposes, would be worth less than its stated value of $220,000.00 if utilized as a residential subdivision, there was no testimony from him as to its value for the former use. Plaintiff's appraiser declared that the land would have but one fair market value, regardless of its use, and that its highest and best use was for residential development. This court finds that the approach by plaintiff's appraiser to the particular evaluation problems arising from the condemnation was both logical and correct, that his testimony was at the time credible, and finally, after weighing all of the testimony before the Court and examining all of the exhibits, this his valuation of $130,000.00 for the captioned premises was eminently fair and represented just compensation to the defendant.
Accordingly, in this appeal by defendant from a statement of compensation in the amount of $130,000.00 filed with this court by plaintiff, judgment may enter in favor of the plaintiff and dismissing said appeal.
JOHN D. BRENNAN, STATE TRIAL REFEREE.