[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs applying for a reassessment of damages for the taking by the defendant of the plaintiffs' property, the plaintiffs claiming that the damages assessed are inadequate.
The defendant Commissioner has taken by condemnation certain land of the plaintiffs located within the Town of Windsor Locks. He has assessed damages in the sum of $20,500, which has already been paid. The date of the taking is March 23, 1990.
The property consists of about 9.88 acres, of which 2.19 acres is wetlands (for the most part in proximity to a brook). The balance of the land is not within the wetlands. It is located on the westerly side of South Main Street adjacent to and with access to the off and on ramp to Route 91. Bradley Field Airport Terminal lies about five miles to the west and is reached by the connector to Route 91. Not far distant and northerly of the subject property is the center of Windsor Locks.
The land is close to the Connecticut River and is subject to flooding. This flooding can occur when the River reaches certain elevation. It may be said that this condition is infrequent, but it can occur. It is caused when the River rises to such an extent that the water "backs up" along the brook and overflows onto the subject property. The property has been used for agricultural purposes, namely the growing of corn. Expert opinion confirms the plaintiffs' claim that the land for the most part is not wetlands.
Expert opinion also lends support to the claim that valet parking is the highest and best use. The CT Page 10344 zoning as to valet parking has been the subject of considerable litigation. The plaintiffs had applied in 1987 to the zoning board for variance to permit valet parking. They were held up in their claim because the Town had enacted a moratorium on valet parking. Without recounting in detail the considerable litigation, the plaintiffs' position had been finally resolved by an agreement between the Zoning Board of Appeals and the plaintiffs. By virtue of the agreement the Board shall again consider the application and shall have full power and authority to grant the variance, provided that the plaintiffs can prove that literal enforcement of the pre-1987 zoning regulations would cause exceptional difficulty or unusual hardship within the meaning of General Statute 8-6. Two members of the Board indicated that they would probably grant the variance. From the evidence produced it is concluded that the Board's decision, while not certain, would probably be favorable to the plaintiffs.
As to the desirability of the site for valet parking, it is true that access to Route 91 and thus to the Connector highway to Bradley Air Terminal is readily available because the access to those highways is convenient and near at hand. However, this property is remote and distant from the airfield, and not readily visible to the travelling public. Certainly, those valet parking lots which are in closer proximity are more visible and are more apt to come to the attention of potential patrons. Accordingly, this aspect seriously affects the market value of this land. It is felt that this would be a cause of concern to a potential buyer.
It is also a fact that the zoning situation is such that, because the subject land has been "grandfathered" under zoning laws, it has become somewhat unique since most other pieces of land within the Town are not in a similar favorable situation as to zoning.
It is noticed that the plaintiffs, at the hearing before the Zoning Board at which they sought a variance, represented that the property was not suitable for any use other than as a parking lot. However, it has been used in part for growing corn, and, as defendant claims could be used for open space. CT Page 10345
The valet parking lots within the Town of Suffield border the airfield, as do such lots on Route 75 within the Town of Windsor Locks.
The plaintiffs presented the testimony of two appraisers who assessed the damages as $1,291,000 and $2,030,000 respectively. The defendant did not present the testimony of its appraiser, although her Report came into evidence and showed an estimate of damage of $20,500. The plaintiffs offered testimony that they purchased these premises in 1973 for $45,000; also that they at one time were offered the sum of $60,000 per acre for the purchase of six of the front acres.
Considering the occasional flooding and the remoteness of the subject land from the airfield, it is felt that a potential buyer would not risk the sums of money suggested by the plaintiffs' appraisers; that patrons would be more likely to patronize parking lots which were closer to or border on the airfield. Such a buyer would feel that this venture would be a considerable gamble and the amount he would pay would be governed accordingly.
The plaintiffs in support of their claims as to zoning, flooding, wetlands and value have provided the court with expert testimony addressed to those questions. This testimony was favorable to them. This was particularly done as to the question of wetlands and flooding with the result that the land for the most part is considered to be free of wetlands.
Ultimately the referee's determination of the value of the property depends upon his considered judgment, taking into consideration the divergent views expressed by the witnesses and the claims of the parties. New Haven Savings Bank v. West Haven Service Development,190 Conn. 60, 69. He may reach his own conclusions as to value by weighing the opinions of the appraisers, the claims of the parties in view of all the circumstances in evidence hearing on value and his own general knowledge of the elements affecting value, selecting the most appropriate method of valuation under the facts found by him. Wronoski v. Redevelopment Agency, 180 Conn. 579, CT Page 10346 596.
Based upon my viewing of the property and the surrounding area, and considering all the evidence, the appropriate law, as well as my own knowledge of the elements constituting value, it is concluded that the damages are $350,000.
Judgment may enter for the plaintiffs for the further sum of $329,500 in addition to the $20,500 already paid, together with interest on said further sum of $329,500 at the rate of 8.0% from the date of taking (March 23, 1990) to the date of payment, together with costs and an allowance of $9,000 as appraisers' fees.
John M. Alexander State Trial Referee