[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of Transportation, pursuant to authority granted him under Sections 13a-73b, 13a-98c and 13b-23 of the Connecticut General statutes had on December 15, 1993 filed a notice of assessment and condemnation with the clerk of the Superior Court for the Judicial District of Stamford-Norwalk at Stamford for a piece of land located at the intersection of West Avenue and Leonard Street in the City of Norwalk and owned by the defendant herein Mr. Elmer Seaman.
The defendant Mr. Seaman being aggrieved by the taking and the assessment as found by the Commissioner has appealed to said court for a reassessment of such damages. This application for reassessment has been referred to the undersigned Judge trial Referee for a final determination. To this end the parties have appeared, given testimony before the undersigned, who has in turn viewed the premises.
The taking at the above location consisted of some 417 square feet outright and in addition a perpetual easement necessitating the taking of an additional 396 square feet. The taking of the fee is for the purpose of improving the traffic flow at that location and the taking of the easement is for the purpose of constructing a sidewalk adjacent thereto.
The Commissioner of Transportation has with the Certificate of Taking deposited with the Clerk of the Court the sum of $31,000.00 representing his estimate of value. The plaintiff has appealed from the assessment and claims he is damaged in the amount of $125,000.00. CT Page 12230
The property is owned in fee simple by the plaintiff herein Elmer Seaman and is located at the northeast corner of the intersection of West Avenue and Leonard Street in the City of Norwalk. It is within an older established commercial district in the downtown area. It is located in a CBDB Central Business Design District. The subject is a pre-existing non conforming use.
The parcel is rectangular in shape with 161.40 feet of frontage on West Avenue. The site is level with a slight downslope from west to east.
The area being taken is level and landscaped with a garden and lawn around a flagpole. There are two large evergreen trees at the intersection and a 4 foot high privet hedge both of which protect the property being taken from exposure to traffic and the urban environment by which it is surrounded. All utilities are available to the site. The subject area is the more desirable of the two recreational areas being more private and secluded than the recreational area to the north which borders on a commercial area and is less private.
The site is presently being utilized as a 52 unit apartment building for the elderly.
Both the Fifth Amendment to the Constitution of the United States and Article First Section 11 of the Connecticut Constitution prohibit the taking of any private property for a public use without just compensation.
Section 13-73(b) of the Connecticut General Statutes which authorizes the taking by the Commissioner of the Department of Transportation, of private property for a public use requires the payment by the State for all damages resulting from the taking.
"The single objective of an eminent domain proceeding is to insure that the property owner shall receive and that the State shall only be required to pay the just compensation which the fundamental law promises the owner, for the property which the State has seen fit to take for public use.'" Thomaston v. Ives,156 Conn. 166, 174, 239 A.2d 515 (1968).
The subject property is a portion of an overall parcel of land being utilized as an apartment complex for the elderly. CT Page 12231
Damages recoverable for a partial taking are ordinarily measured by determining `the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it, thereafter, taking into consideration the damages contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.'" Cappiello v. Commissioner ofTransportation, 203 Conn. 675, 679; Daddario v. Commissioner ofTransportation, 180 Conn. 355, 365, 429 A.2d 890 (1980), quotingLefebvre v. Cox, 129 Conn. 262, 265, 28 A.2d 5 (1942).
"It is the courts duty to award just compensation to an owner whose property is taken for public use. The usual measure of just compensation is the fair market value or the price that would probably result from fair negotiations between a willing seller and a willing buyer, taking into account all the factors, including the highest and best or most advantageous use, weighing and evaluating the circumstances, the evidence, the opinions expressed by the witnesses and considering the use to which the premises have been devoted and which may have enhanced its value." Put in another way, the rule is that the trier must take into consideration everything by which value is legitimately affected including those factors which a willing buyer and a willing seller would consider in fairly and advantageously negotiating an agreement." Wronowski v. Redevelopment Agency,180 Conn. 579, 585-586. (Internal Citations omitted).
It is agreed between the parties that the highest and best use of the property both before and after the taking is its present use as a senior citizen apartment complex. By highest and best use one means the most profitable likely use to which a property can legally be put.
The plaintiff's appraiser employed the income capitalization approach using a particular technique known as Discounted Cash Flow Analogies in arriving at a before taking value. Using this technique, he defines property value as the sum of the present value of the mortgage plus the present value of the cash flows plus the present value of the reversion. From this he finds the present value (as of the date of taking) to be $2,516,724.00 rounded to $2,515,000.00. Using the same approach to determine after taking value, the appraiser found the after taking value to be $2,390,000.00. Damages were thus estimated to be $125,000.00. CT Page 12232
The defendant Commissioner of Transportation employed the sales comparison approach to value. Actually, two appraisals were admitted into evidence, one estimating value as of May 11, 1993 and the other as of December 15, 1993. Except for the fact that new comparable sales were used in the second appraisal, the appraiser testified that there was no relevant change in the market during the ensuing period. In the first instance, the damages were found to be $31,300.00, the amount deposited to the clerk of the court. The latter appraisal found damages in the amount of $16,000.00.
Based on the conclusion that the building and parking lot would not be affected by the acquisition, only the land, as if vacant, was valued. The landscaping within the area taken including some 100 ± linear feet of fully matured privet hedge and two fully grown trees were included in the valuation.
The defendant's appraiser contends that the taking will not affect the value of the remaining property, its housing structure, parking area or miscellaneous site improvements. He does concede, however, that the property will suffer a loss of a portion of its privacy and noise abatement screening with the removal of the two trees and the privet fence portion. Nevertheless, he places no value on this loss.
As for the comparables used by the defendant while improved, the appraisals were as a land only transaction. Comparable 1 was part of an assemblage of properties for an office development, while Comparable 2 was purchased with a three bay service station on it which was demolished prior to the transfer of title by the prior owner. Comparable 3 was purchased by an abutter in order to provide parking for the church adjacent thereto.
The court finds that the method of determining value as employed by the owner to be more accurate and therefore accepts the findings made by the owner's appraiser. During the trial, the state made much of what appeared to be an inaccuracy in the figures of the plaintiff's appraiser which amounted to a $5,000.00 reduction in the amount of damages found. During a recess, however, a correction was made arriving at the figure of $125,000.00 for the amount of damages.
In arriving at its finding of value, after the taking, the defendant commissioner found no damages to the remainder. The CT Page 12233 removal of the trees and the privet hedge had a profound effect upon the remainder. Not only has there been a loss of the recreational area for the tenants of the apartment complex, but also the aesthetics have been severely damaged. Traffic must now pass closer to the building, making the first floor units less desirable. Tenants who in the past were able to look out from their apartments onto a private landscaped area an oasis in the middle of a highly developed urban area. The court is of the opinion that there has been a definable loss suffered by the owner as a result of the taking.
In an attempt to determine the value of the easement, the plaintiff has appraised the property as if it were a taking of the fee while the defendant has appraised the easement area at 95% of its value, since the taking was something less than the fee. The court agrees with the defendant in this instance. See After considering all of the evidence relating to the easement area which consisted of some 398 square feet more or less and since that is approximately one-half of the property taken, the court makes an adjustment in the estimate of damages claimed by the plaintiff by deducting 2 1/2% from $125,000.00 amounting to $3,125.00 leaving a total damage figure of $121,875.00.
The court finds the value of the property before the taking to amount to $2,515,000.00 and the value after the taking to be $2,381,895.00 for a damage total of $121,875.00 with interest and costs.
There remains the question of interest on the damage award. In the case of Leverty Hurley v. Commissioner ofTransportation, the court held that: "The ascertainment of just compensation is a judicial question, the amount of interest to be paid as an additional component . . . is also a matter for judicial determination." Leverty Hurley v. Commissioner ofTransportation, 192 Conn. 377, 380-381.
The court finds a just and reasonable rate of interest to be 5.77%, the average yield on Treasury Bills over a ten year period.
An appraisal fee of $4,000.00 is awarded the plaintiff.
Judgment may enter in accordance with the above.
Curran, JTR CT Page 12234