[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Under date of July 20, 1998, the Bridgeport Redevelopment Agency, hereinafter known as BRA, filed a notice of condemnation and statement of compensation in the amount of $180,000 against Gregory Pantchenko on property owned by the said Pantchenko, consisting of approximately .96 acres located at 150 East Main CT Page 261 Street, Bridgeport.
On August 1, 1998, Pantchenko appealed the statement of compensation as inadequate.
The subject property was bought in several stages for a total amount of $600,000, and, when finally completed, consisted of a rectangular shape with total road frontage of 624 feet combined on Stratford Avenue, East Main Street and Pierpont Street, and several buildings used for storage and office space. The property is zoned heavy industrial (I-HI).
Pantchenko testified that he had operated a highly successful used equipment company on the property for over twenty years and earned $150,000 net income annually. His inventory of used equipment was valued at approximately $2,000,000. The court has reviewed the premises and found that the open property was stacked on practically every inch, sometimes to a height of fifteen feet with all kinds of used equipment, machinery and all kinds of scrap metal.
One of the issues in the case is the availability of suitable properties to which Pantchenko's business might be relocated. The court heard three real estate appraisers, one on behalf of Pantchenko and two on behalf of BRA.
Robert Royce testified for the plaintiff, Pantchenko. Royce used the comparable sales approach, complaining however, that there was no property zoned I-HI in Bridgeport available for comparison. He therefore resorted to improved properties in I-LI zones, asserting that it was legally permissible to store equipment within the improvements. It was his contention that outside storage was not permitted in I-LI zones, therefore, square foot land sales prices of properties in such zones must be compared to the subject property on a square foot basis to arrive at a square foot price of subject property. Using this method he arrived at an average square foot price of seven improved property sales of $25.09. Applying this formula to total land area of 41,031 square feet of subject property, he arrived at a rounded value of $1,030,000 for subject parcel.
Pete Zeidel testified for the defendant BRA. He considered that the subject property was being used as a junk yard. Using comparable sales, after adjustments he considered appropriate, he arrived at a market value of $2.75 per square foot for subject CT Page 262 property or a rounded figure of $114,000 for the land and $9.26 per square foot exclusive of the land, or a rounded figure of $66,000, making his appraisal of the total value of subject property to be $180,000.
Peter Vimini also testified for BRA. He also considered subject property to be used as a junk yard and using the cost approach for the improvements consisting of a main building, auxiliary building, a garage and fencing and gates, he arrived at a total depreciated value of the improvements at $79,000.
For land values, he used the sales comparison approach. Using four comparables, with what he considered proper adjustments, he arrived at a rounded figure of $108,000 for the land value making his opinion of subject property's value the total sum of $187,000. In a subsequent appraisal, he increased his opinion of the fair market value of subject property to $208,000.
None of the appraisers considered the rule adopted in a line of cases starting with Housing Authority v. Lustig 139 Conn. 73, that "the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value — if, that is, the use of the real property for that purpose enhances the value of it." (at pg 73, 74).
The Court in Lustig supra, considered the nature of the business, that of slaughtering poultry, which is not one which may properly be conducted in every neighborhood and that suitable locations were relatively few. It also stated that the fact that the slaughtering business was established on the property in question was evidence that the property was suitable for that use and that it was an indication of what was an advantageous use of the property.
Counsel for the appellant, Pantchenko, argued strenuously that the principle of the Lustig case, supra, and cases such as Feigen-Baum v. New Britain Housing S.D.A. 164 Conn. 254
and Wronowski v. Redevelopment Agency of New London,180 Conn. 579, which following Lustig, should be applied here.
Counsel for the appellee summarily rejected this argument, stating tersely that any attempt to analogize this case to Lustig, supra, is misconceived. CT Page 263
The court disagrees.
The business on the property returns an annual net income of $150,000. It has over 600 feet frontage on three public streets. It is located in one of the few I-HI zones in Bridgeport. It is in very close proximity to three major transportation services, the waterfront harbor, railroad station and I-95. There is testimony from a realtor, Jonathan Angel, that there are no suitable properties in Bridgeport available for relocation. There is testimony from a Max Perez of the office of Economic Development in Bridgeport, who attempted to help the appellant find properties for relocation but found none suitable.
The Court finds that the appellant's property is ideally applicable to the rule of the Lustig case, supra. The business is of a specialized nature, ideally located for such use, is the highest and best use of the property, significantly enhances the property, and is not one which might properly be in every neighborhood.
Counsel for the appellee made much of the fact that the Zoning Regulations of Bridgeport allowed outside storage in an I-LI zone. The court has serious doubts that the type of outside storage engaged in by the appellant would receive tolerant treatment in an I-LI zone. Appellant has already been served with a Cease and Desist order for operating a junkyard in an I-HI zone, let alone attempting to operate his business in an I-LI zone. The aforementioned order was never pressed.
In addition to claiming damages for the taking of his property, appellant seeks $695,000 for moving his vast inventory of $2,000,000 which it was testified would take four months and require three hundred trailer loads. In addition, the appellant seeks damages in the amount of $178,000 for a fence which must be installed to protect his property and $50,000 as damages for the interruption of his business.
The appellee claims that the appellant is not entitled to any relocation expenses because the entity has not received zoning compliance certificates nor Coastal Area Management approvals. The claim for business interruption is also disputed.
The citations are too numerous to mention that in eminent domain, the condemnee is entitled to just compensation, which CT Page 264 means that the former owner must be placed in as good, if not better position, than before the taking, that just compensation must be measured by damages to the condemnee, what he has lost. This has been interpreted as the fair market value at the time of the taking.
The statute involved C.G.S., 8-132, authorizes the trial referee to revise the statement of compensation in such manner as he deems proper. The statement of compensation was in the amount of $180,000 and appellee concludes his memorandum of law by submitting that an additional $28,000 (Vimini's appraisal) would be adequate compensation.
The law of eminent domain speaks of just compensation, fair market value. The statute speaks of revising the statement of compensation as the trial referee deems proper. The appellee argues that the law in this case requires that the court should award the appellant as just compensation or proper compensation, the total sum of $208,000. If that is the law applicable to this case, some other court will have to pronounce it. This court can hardly deem as proper the sum of $208,000, considering that the appellant paid $600,000 for the property, that to relocate will require an expensive fence ($178,000) if he relocates to vacant land, that he will be forced to pay many times the statement of compensation if an adequate building is involved, that relocation expense will cost triple the statement of compensation, and interrupt his business for three months, and other miscellaneous expenses.
The court finds the fair market value of the plaintiff's property on the date of taking to be $600,000. In addition, the court finds that an element of proper compensation should be the cost of relocating the plaintiff's inventory, which cost the court finds to be $695,000. The defendant has filed a deposit in court of $180,000, which has been withdrawn by the plaintiff. Wherefore, it is adjudged that damages are payable to the plaintiff in the amount of $1,115,000, together with interest at the statutory rate of 10% from the date of taking to the date of payment.
The plaintiff is further allowed the sum of $4,252.00 for the appraisal report of Mr. Royce and $750.00 for court testimony.
BELINKIE, J.T.R. CT Page 265