COMMISSIONER OF TRANSPORTATION *v.* ROCKY MOUNTAIN, LLC, ET AL.
(SC 17317)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued September 22, 2005—officially released April 11, 2006

*Gregory F. Servodidio*, with whom was *Laura A. Bellotti*, for the appellant (defendant Viacom Outdoor, Inc.).

*Peter R. Huntsman*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The defendant Viacom Outdoor, Inc. (Viacom), a business that sells outdoor advertising,[1] appeals from the judgment of the trial court awarding Viacom damages for the taking by eminent domain of an easement for two billboards by the plaintiff, the commissioner of transportation (commissioner). The two dispositive issues in this appeal are whether the trial court: (1) possessed subject matter jurisdiction to make a separate damages award for the loss of the billboards; and (2) improperly failed to award damages for the loss of all of the income generated by the billboards when the trial court reassessed damages for the taking of the easement. We conclude that the trial court did not have subject matter jurisdiction to make a separate damages award for the loss of the billboards and that the trial court properly declined to award damages for all of the lost billboard income when it reassessed damages for the taking of the easement. We therefore

---

[1] The named defendant, Rocky Mountain, LLC, which was the owner of the land that was condemned, has not appealed from the judgment of the trial court. Also named defendants were, inter alios, Mark Greenberg, David Leitner and the city of Waterbury. Those parties are not involved in this appeal.

vacate the trial court's order with respect to the amount of damages awarded separately for the billboards and we affirm the judgment in all other respects.

The record reveals the following facts and procedural history that are relevant to our resolution of this appeal. In 1998, Viacom's predecessor in interest was granted an easement[2] permitting it to maintain two billboards[3] for a term of ninety-nine years on certain land located in Waterbury. Both the fee interest in the land, which was owned by the named defendant, Rocky Mountain, LLC (Rocky Mountain), in 2001, and Viacom's easement were condemned by the commissioner in 2002 for a highway reconstruction project. In August, 2001, prior to the taking, the commissioner had sent a letter to Viacom informing Viacom that the reconstruction project required removal of its billboards from the property. The letter had offered Viacom $40,300 if it chose to abandon the billboards and a lesser amount if Viacom chose to remove and retain the billboards. Viacom did not accept either amount.

On February 8, 2002, the commissioner filed a notice of condemnation and an assessment of damages for taking the land, including the easement, of $326,500. Viacom and Rocky Mountain both appealed from the assessment to the trial court, seeking a reassessment of damages. Viacom sought damages for the taking of both the easement and the billboards. The commissioner thereafter filed a motion to dismiss Viacom's appeal for lack of subject matter jurisdiction, arguing that the billboards constituted personal property that was not acquired by the condemnation and that Viacom

---

[2] Although the granting document referred to the interest as an "easement lease," for convenience, we generally refer to Viacom's interest in the land as an easement.

[3] We note that the terms "billboards," "signs," and "outdoor advertising structures" often are used interchangeably. In this opinion, we use the term "billboards" to refer uniformly to these objects.

failed to allege that it was aggrieved by the taking of the easement. The trial court denied the motion to dismiss, concluding that Viacom's loss of the easement was sufficient to establish aggrievement. The trial court did not rule on the commissioner's claim that the billboards had not been taken as a result of the condemnation. The commissioner then filed an answer and special defenses, including a defense that the billboards are personal property and were not part of the taking described in the notice of condemnation.

At trial, Viacom's appraiser, Donald Sutte, testified that he had valued Viacom's easement interest at $192,300, which he calculated by relying on a portion of the income generated by the billboards. The commissioner's appraiser for the land, Walter Kloss, agreed that Sutte's valuation of $192,300 constituted a reasonable value for the easement.

Sutte further testified that, in his opinion, Viacom possessed a separate real property interest in the billboards, which he called a "leasehold interest."[4] Sutte defined this "leasehold interest" as the value of the billboards as well as the right to use and occupy the billboards. Sutte separately appraised the "leasehold interest," ascribing values of $234,900 and $201,000, respectively, to the two billboards, which he had calculated by relying largely upon the income generated by the billboards. Sutte combined these values for the "leasehold interest" with the value ascribed to the easement for a total valuation of $628,200.

---

[4] This court has used the term "leasehold interest" to refer to an interest in real property created by the existence of a lease. See, e.g., *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003); *Canterbury Realty Co.* v. *Ives*, 153 Conn. 377, 382, 216 A.2d 426 (1966). Viacom's use of it here to denote a real property interest generated by personal property located on an easement may be inconsistent with our prior usage and we place quotation marks around the phrase to indicate that we do not adopt Viacom's usage as our own.

Charles Floyd, the commissioner's expert witness concerning valuation methodologies, testified that the billboards and their income are components of Viacom's outdoor advertising business, and do not constitute a separate compensable interest in real property. The commissioner's billboards appraiser, Bruce Cowdrey, testified that the value of the billboards was $40,300. Cowdrey valued the billboards as personal property and considered only the cost of the component parts, without considering the income generated by them.[5]

After trial, by judgment dated May 14, 2004, the court reassessed the damages from the taking and awarded $192,300 to Viacom.[6] The judgment file indicated that the trial court would issue a memorandum of decision at a later time. On June 3, 2004, Viacom appealed from the trial court judgment.[7]

In its subsequent memorandum of decision, dated July 2, 2004, the trial court found that $192,300 was the fair market value of the easement "improved with the billboard structures . . . ." The trial court rejected Viacom's contention that the billboards constituted an independently compensable interest in real property, finding that "the billboards are not real estate but personal property." In the final paragraph of its memoran-

---

[5] Although the commissioner presented evidence concerning the value of the billboards in response to Viacom's evidence, at no point did the commissioner concede that compensation for the billboards was a proper element of the damages award, a fact noted by Viacom in its supplemental brief. In fact, the commissioner continued to contest vigorously this point in the posttrial hearing on Viacom's motion for rectification.

[6] The trial court also reassessed damages for the taking of the fee interest in the land and awarded $631,260 to Rocky Mountain. As we previously have noted herein, Rocky Mountain has not appealed from the reassessment of its damages.

[7] Viacom appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

dum of decision, the trial court stated that "the court does not consider [the billboards] to be real property, and the offer of compensation by the commissioner, conditioned on Viacom's abandonment of the [billboards], is reasonable."

On October 4, 2004, Viacom moved for rectification of the judgment, requesting that the trial court increase the amount of the judgment by $40,300, the amount of the commissioner's offer based on the abandonment of the billboards. Viacom argued that the judgment should include that amount because the trial court had found in its memorandum of decision that the commissioner's offer of compensation for the billboards was reasonable, but failed explicitly to award that amount as damages. After a hearing on October 26, 2004, the trial court granted the motion for rectification and, in an oral ruling from the bench, amended the judgment by increasing the damages awarded to Viacom by $40,300 in compensation for the billboards, which the court again found to be personal property. Thereafter, on March 24, 2005, the trial court issued a written "Order Re Motion for Rectification" in which the court stated that its decision to grant the motion was based on its consideration of General Statutes § 13a-123 (g) (2), the testimony and written appraisal of Cowdrey, the commissioner's billboards appraiser, and requirements of federal law set forth in 42 U.S.C. § 4652 and 49 C.F.R. § 24.105 (a).

After both parties had filed their briefs in this appeal, we ordered the parties to file supplemental briefs addressing whether the trial court's postjudgment decision to award damages for the billboards constituted an opening of the judgment that rendered this appeal moot under existing case law.[8] Additional facts will be set forth as necessary.

---

[8] Specifically, the parties were ordered to file supplemental briefs on the following issue: "Because it appears that the judgment appealed from was, in effect, opened by the trial court's memorandum of decision, wherein Viacom was awarded additional damages [f]or the billboard structures them-

I

We first consider whether the trial court's postjudgment increase of Viacom's damages award rendered this appeal moot because "[m]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). Although both parties assert that the appeal is not moot, "a subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005).

This court previously has held that when a judgment is opened and modified after an appeal has been taken, the original judgment is rendered a legal nullity and the appeal from that judgment therefore becomes moot. See *Milford Trust Co.* v. *Greenberg*, 137 Conn. 277, 279, 77 A.2d 80 (1950) (modification of judgment "necessarily implie[s] an opening of the preceding judgment which it modified" and appeal from original judgment is void [internal quotation marks omitted]); *Coxe* v.

selves, and, thus, the judgment appealed from may no longer be in effect, the parties are ordered to brief the issue of why the appeal should not be dismissed as moot. See *Milford Trust Co.* v. *Greenberg*, 137 Conn. 277 [279, 77 A.2d 80] (1950); *Coxe* v. *Coxe*, 2 Conn. App. 543, 547 [481 A.2d 86] (1984); see also *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 106 [110, 616 A.2d 798] (1992)."

*Coxe*, 2 Conn. App. 543, 547–48, 481 A.2d 86 (1984) (modifications to original judgment gave rise to entirely new judgment and court had authority to act upon motion to open that was filed within four months of most recent modification). In the present case, both parties argue that the trial court's postjudgment increase in the amount of the judgment for Viacom did not constitute an opening of the judgment that would render moot this appeal. Viacom argues that the trial court's decision to grant the motion for rectification and to increase the damages award merely clarified the court's intent that the amount of the commissioner's offer for the billboards be included in the original judgment. Because the amendment merely clarified the judgment, Viacom asserts, the appeal is not moot.

The commissioner argues first that the memorandum of decision did not moot the appeal because the trial court did not intend to open the judgment. Moreover, the commissioner argues, the trial court lacked the authority to modify the judgment by adding damages for the billboards. The commissioner argues that the trial court lacked authority to award damages for the billboards because such damages constitute relocation expenses rather than compensation for the taking of real property, and the government's obligation to compensate for relocation expenses is governed by the Uniform Relocation Assistance Act, General Statutes § 8-266 et seq. (state relocation act), which dictates that review of such decisions shall be made according to the procedures of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. (UAPA). Because this action was brought pursuant to the condemnation statutes governing highway projects; see General Statutes § 13a-73 et seq.; and did not conform to the requirements of the UAPA, the commissioner contends that the trial court lacked jurisdiction to award relocation expenses. The commissioner also

argues that the trial court was barred by General Statutes § 52-212a[9] from opening the judgment in October, 2004, because more than four months had passed since the original judgment was rendered on May 14, 2004.

We, therefore, must determine whether the trial court effectively opened the judgment when it granted the motion for rectification and increased the amount of the damages awarded and, if so, whether the opening of the judgment rendered this appeal moot. We conclude that the trial court did open the judgment, but that the opening of the judgment did not moot this appeal because the trial court lacked subject matter jurisdiction to make a separate award of damages for the billboards. The modification of the judgment to add such an award therefore was void and of no legal effect.

A

Our case law establishes that any substantive modification of a judgment constitutes an opening of the judgment. The issue of whether a particular action by the trial court opens the judgment typically arises when the court alters the judgment more than four months after the judgment was rendered and a party challenges the court action as an untimely opening of the judgment

[9] General Statutes § 52-212a provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (o) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court, provided the filing of an amended petition for termination of parental rights does not constitute a waiver of the provisions of this section or a submission to the jurisdiction of the court to reopen a judgment terminating parental rights."

under § 52-212a[10] and Practice Book § 17-4,[11] both of which provide that the trial court lacks the power to open a judgment more than four months after the judgment is rendered.[12] In those cases that considered whether a modification to a judgment constituted an untimely opening of the judgment, we generally have deemed any action by the trial court that substantively modifies a judgment to be an opening of that judgment. See *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 432, 881 A.2d 230 (2005) ("[i]t is well established that a court's ability to modify a prior ruling ordinarily is limited by [§ 52-212a]"). This court consistently has held that "[i]n the absence of waiver or consent of the parties, a court is without jurisdiction to modify or correct a judgment in other than clerical respects" beyond the four month period. (Internal quotation marks omitted.) *Blake* v. *Blake*, 211 Conn. 485, 495, 560 A.2d 396 (1989).

We conclude that, in the present case, the trial court modified and opened the judgment when it added $40,300 to the amount of the damages awarded to Via-

[10] See footnote 9 of this opinion.

[11] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

[12] We note that § 52-212a provides that the four month period begins to run from the date on which the judgment was rendered and § 17-4 (a) provides that the four month period begins to run from the date notice of the judgment is sent. See *Federal Ins. Co.* v. *Gabriele*, 54 Conn. App. 459, 462, 735 A.2d 368 (1999) (holding that § 17-4 governs and four month period commences on date notice is sent, without discussing § 52-212a). This difference is of no relevance to the present case.

Prior to the enactment of § 52-212a and § 17-4 of the rules of practice, both of which became effective in 1978, the common-law rule limited the court's power to open a judgment to the term of court at which the original judgment was rendered. See *Cichy* v. *Kostyk*, 143 Conn. 688, 690, 125 A.2d 483 (1956).

com. The addition of such a substantial sum to the judgment to compensate Viacom for the billboards, items for which Viacom did not receive damages in the original judgment, constituted a modification of the judgment "in other than clerical respects," and, thus, effectively opened the judgment. See id. This substantive modification of the judgment is analogous to the trial court's postjudgment decision to add interest to the amount of the award in *Goldreyer* v. *Cronan*, 76 Conn. 113, 117, 55 A. 594 (1903), which this court rejected because it was a substantive modification that improperly altered the judgment after expiration of the time limit for opening judgments. See also *Milford Trust Co.* v. *Greenberg*, supra, 137 Conn. 279 (modification of judgment "necessarily implie[s] an opening of the preceding judgment which it modified" [internal quotation marks omitted]); *Morici* v. *Jarvie*, 137 Conn. 97, 104, 75 A.2d 47 (1950) (trial court lacked power to modify judgment from mere determination of debt to full foreclosure judgment after expiration of term of court at which judgment entered); cf. *Blake* v. *Blake*, supra, 211 Conn. 497 (change in nomenclature of award from "lump sum alimony" to "division of property" after expiration of four months was not substantive modification of judgment).

Viacom's argument that the increase in the judgment merely clarified the trial court's intent, and thus did not constitute a substantive modification, is contradicted by the trial court's statement during the hearing on the motion for rectification that it did not intend to award damages for the billboards in the original decision because it did not believe that it possessed the legal authority to do so. Distinguishing between the value of the easement and the value of the billboards, the trial court explained that it believed that the state had agreed to pay the $40,300 for the billboards and that the amount was reasonable, but failed to award that amount as

damages because it concluded that the value of the billboards, which it found to be personal property rather than real property, was not an issue that properly was before the court. The court subsequently decided to amend the judgment to include those damages after Viacom convinced the court in its argument on the motion for rectification that the trial court did have the authority to award damages for the billboards in the condemnation action.

Thus, the record contradicts Viacom's claim that, when the trial court increased the amount of damages awarded to Viacom, it merely corrected a clerical error in order to make the judgment conform to the court's original decision. Rather, the record reveals that the trial court was modifying the substance of the damages award, by adding $40,300 to the award, based on a change in its understanding of the law. Under our case law, a substantive modification of a judgment constitutes an opening of the judgment and, thus, we conclude that the trial court's decision in the present case to increase the amount of the damages award constituted an opening of that judgment.

B

We next must determine whether the trial court had jurisdiction to make a separate award of damages for the billboards. We conclude that it did not.

The commissioner argues that the trial court's opening of the judgment is without legal effect because the trial court lacked subject matter jurisdiction to award damages for the loss of the billboard structures. The commissioner contends that the trial court was not authorized to compensate Viacom for the billboards because the billboards are personal property and personal property is not compensable in an eminent

domain appeal pursuant to General Statutes § 13a-76.[13] Moreover, the commissioner argues, state law provides a separate mechanism to compensate Viacom for the loss it will incur because of the mandatory removal of the billboards. Under the state relocation act, businesses are eligible to receive compensation for relocation expenses and losses when they are forced to remove personal property as a result of the state's acquisition of real property. General Statutes § 8-268. If a business seeks to contest the amount of compensation

[13] General Statutes § 13a-76 provides: "Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated for a reassessment of such damages or such benefits so far as the same affect such applicant. The court, after causing notice of the pendency of such application to be given to the commissioner, may appoint a judge trial referee to make such reassessment of such damages or such benefits. The court or such judge trial referee, after giving at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and the commissioner, may view the land, and shall take such testimony as the court or such judge trial referee deems material and shall thereupon reassess such damages and benefits so far as they affect such applicant. The reassessment by the court or such judge trial referee shall take into account any evidence relevant to the fair market value of the property, including evidence of required environmental remediation by the Department of Transportation. The court or such judge trial referee shall make a separate finding for remediation costs, and the property owner shall be entitled to a set-off of such costs in any pending or subsequent legal action to recover remediation costs for the property. If the amount of the reassessment of such damages awarded to any such property owner exceeds the amount of the assessment of such damages by the commissioner for such land, the court or such judge trial referee shall award to such property owner such appraisal fees as the court or such judge trial referee determines to be reasonable. If no appeal to the Appellate Court is filed within the time allowed by law, or if one is filed and the proceedings have terminated in a final judgment finding the amount due the landowner, the clerk shall send a certified copy of the assessment of the commissioner and of the judgment to the Comptroller, who shall, upon receipt thereof, draw an order upon the Treasurer in favor of the landowner for the amount due the landowner as damages. The pendency of any such application for reassessment shall not prevent or delay the layout, extension, alteration, widening, change of grade or other improvement of any such highway."

offered by the state, the state relocation act requires an appeal to the acquiring agency; General Statutes § 8-278; followed by an administrative appeal to the Superior Court pursuant to the UAPA. The commissioner argues that Viacom's failure to pursue an administrative appeal challenging the commissioner's offer of compensation for the billboards constituted a failure to exhaust administrative remedies as required by the UAPA and thereby deprived the trial court of subject matter jurisdiction to decide Viacom's challenge to that amount. Viacom, in response, claims that compensation for the billboards was proper in the eminent domain action because the commissioner was, in fact, seeking to acquire the billboards and because state and federal law require the commissioner to acquire "at least an equal interest in all . . . structures, or other improvements located upon the real property" acquired by eminent domain. 42 U.S.C. § 4652. See General Statutes § 8-267a. We agree with the commissioner.

"[T]he exhaustion doctrine implicates subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 563, 821 A.2d 725 (2003). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citations omitted; internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 441.

1

Viacom contends that the trial court had the authority to award compensation for the billboards under the

highway condemnation statutes, General Statutes § 13a-73 et seq., pursuant to which the commissioner filed the notice of taking in this action. We disagree.

We begin with § 13a-73, which authorizes the commissioner to take real property for highway improvement purposes. Real property is statutorily defined and limited to "land and buildings and any estate, interest or right in land" in § 13a-73 (a).[14] Thus, § 13a-73 authorizes the commissioner to take only interests or rights in land. Any person aggrieved by the commissioner's assessment of damages for such a taking may apply to the Superior Court for reassessment of the compensation due. General Statutes § 13a-76.[15] "We have stated repeatedly that [t]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land . . . ." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 25, 861 A.2d 473 (2004).

The many takings cases decided by this court over the years establish that, although elements of takings

[14] General Statutes § 13a-73 provides in relevant part: "(a) . . . 'Real property', as used in this section, includes land and buildings and any estate, interest or right in land.

"(b) . . . The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or other improvement of any state highway or for a highway maintenance storage area or garage and the owner of such land shall be paid by the state for all damages, and the state shall receive from such owner the amount or value of all benefits, resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. . . . The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court for the judicial district in which the land affected is located. . . ."

[15] See footnote 13 of this opinion.

such as lost profits or personal property are not independently compensable because they do not constitute real property, the value of such elements nevertheless may be considered in determining the fair market value of the land. See, e.g., *Alemany* v. *Commissioner of Transportation*, 215 Conn. 437, 446–47, 576 A.2d 503 (1990) (cost of moving sign should have been considered in determining loss in value of property not taken); *Seferi* v. *Ives*, 155 Conn. 580, 583–84, 236 A.2d 83 (1967) (loss of business not separate element of damage, but may be considered in determining value of land), appeal dismissed, 391 U.S. 359, 88 S. Ct. 1665, 20 L. Ed. 2d 640 (1968); *Edwin Moss & Sons, Inc.* v. *Argraves*, 148 Conn. 734, 736, 173 A.2d 505 (1961) (sand and gravel on property not separately compensable but properly considered for effect on market value of land); *Harvey Textile Co.* v. *Hill*, 135 Conn. 686, 690–91, 67 A.2d 851 (1949) (cost of removing property is not separate element of damage, but should be considered as evidence of fair market value of land).

In the present case, the trial court considered the presence of the billboards in its initial determination of the value of Viacom's easement interest in the real property. The court stated in its memorandum of decision that, "the billboard structures are intrinsic to a consideration of the fair market value of the easement. The court finds that *the fair market value of the easement improved with the billboard structures* is $192,300." (Emphasis added.) During the hearing on the motion for rectification, the trial court further stated that it had not awarded separate damages for the billboards initially because it had concluded that the structures were personal property and that personal property was not compensable as a separate element in a condemnation action. Thus, the record indicates that the trial court properly considered the presence of the billboards in determining the value of Viacom's real prop-

erty interest in the easement, but initially declined to award damages for them based on its correct understanding that elements that do not constitute real property are not separately compensable under §13a-73 et seq. and existing case law.

During the hearing on the motion for rectification, the trial court expressly indicated that it was granting the motion in order to "enter as part of my judgment the personal property which I found to be reasonable, $40,300 for Viacom from the state for what I consider to be the personal property, the billboards." The court thereby made clear that it was awarding compensation for the billboards as a separate element of damages, rather than increasing the award of damages for the easement based on a reconsideration of the contribution of the billboards to the easement's value. The trial court's subsequent amendment of the judgment to include a separate award of damages for the billboards themselves therefore cannot be justified as a legitimate exercise of the court's authority under § 13a-76.

### 2

Having determined that the trial court in the present case was not exercising its powers pursuant to the highway condemnation statutory scheme, we next consider whether the trial court properly awarded damages for the billboards under the state's billboard condemnation statute, General Statutes § 13a-123,[16] upon which

---

[16] General Statutes § 13a-123 (g) provides: "(1) Whenever the commissioner deems it in the best interest of the state, the commissioner may acquire by purchase, gift or condemnation, in accordance with part IV of this chapter, the right to advertise or regulate advertising in an area adjacent to the right-of-way of a project on the interstate or primary system or any limited access state highway. (2) The commissioner may also acquire by purchase, gift or condemnation, and shall pay just compensation upon the removal of the following outdoor advertising structures, signs, displays and devices adjacent to interstate and federal-aid primary highways which (A) were lawfully in existence on October 22, 1965, (B) were lawfully on a highway made part of the interstate or primary system on or after October 22, 1965, and before January 1, 1968, and (C) were lawfully erected on or

the trial court indicated that it had relied in its written order granting the motion for rectification. We conclude that it did not.

The following additional facts are necessary to our resolution of this issue. The commissioner's notice of condemnation in the present case indicates that it was filed "[p]ursuant to the provisions of [§] 13a-73 (b)"; it describes the property that is being taken by its dimensions and boundaries and by reference to a map showing the land taken. The notice of condemnation makes no reference to the billboards or to § 13a-123. The list of parties affected by the taking includes Viacom's predecessor in title with the term "easement lease" in parentheses after the party's name.[17] Moreover, a former state employee who testified on behalf of Viacom at trial stated that the condemnation notice filed by the commissioner did not include an assessment of damages for the billboards.

The trial court indicated in the order accompanying the amended judgment that it considered § 13a-123 (g) (2) in deciding to modify the judgment to include a separate damages award for the billboards. Although the trial court's reference to § 13a-123 (g) (2) suggests that the commissioner's notice of condemnation was filed, in part, pursuant to its power under this statute, the trial court did not reach that conclusion explicitly and the record does not support such a conclusion.

after January 1, 1968. Just compensation for the removal of structures, signs, displays and devices along the interstate and primary systems shall be paid only for the following: (i) The taking from the owner of such sign, display or device of all right, title, leasehold and interest in such structure, sign, display or device; and (ii) the taking, from the owner of the real property on which the structure, sign, display or device is located, of the right to erect and maintain such structures, signs, displays and devices thereon."

[17] Testimony at trial established that Viacom is the ultimate successor in interest to the party listed on the notice of condemnation, Gannett Outdoor Company of Connecticut, which previously owned the billboards and easement. Intermediate successors in interest included Outdoor Systems and CBS Infinity Broadcasting.

As we previously have noted herein, after Viacom filed its appeal in the Superior Court, in which it sought compensation for both its easement interest and the billboards, the commissioner filed a motion to dismiss the appeal for lack of subject matter jurisdiction, arguing that the billboards are personal property that were not subject to the taking. The trial court denied the motion to dismiss, without ruling upon the commissioner's claim that the billboards were not a part of the condemnation action. The commissioner then filed an answer and special defenses, including a defense that the billboards are personal property and were not included in the notice of condemnation. Thus, the record indicates that the commissioner consistently maintained throughout the litigation that he never considered the billboards to be a component of the taking for which he filed the notice of condemnation and assessment of damages.

The record does reveal one reference to § 13a-123. The commissioner's appraiser used a form entitled "Signboard Valuation Form" to record his appraisal of the value of the billboards. On that form, directly underneath the title, is a line that provides "Reference Sec. 13a-123 General Statutes." The form also indicates that the purpose of the valuation is to estimate the "just compensation" due the owner of the billboards. The fact that the commissioner's appraiser recorded his valuation of the structures on a form that references § 13a-123 indicates that the commissioner might have begun the process of exercising his power to take the billboards by condemnation pursuant to § 13a-123 (g). He did not further that process, however, when subsequently filing the notice of taking, which was limited by its terms to the land and the easement.

We conclude that the trial court did not have the authority to award damages for the taking of the billboards in the present action, because the commissioner

only exercised his power to take real property under § 13a-73. The notice of condemnation failed to make any reference either to the billboards or to § 13a-123. Moreover, the commissioner at all times resisted Viacom's attempts to include the billboards within the scope of the present action. If the commissioner had intended to take the billboards pursuant to § 13a-123, he was obliged to proceed according to the procedures set forth in § 13a-73 et seq. See General Statutes § 13a-123 (g) (1) (condemnation should be made "in accordance with part IV of this chapter," in other words, pursuant to §§ 13a-73 through 13a-85b). The commissioner's failure to include the billboards in his notice of condemnation reveals that the commissioner did not intend to take the billboards by means of this condemnation action.[18] Therefore, the trial court could not rely on § 13a-123 as a basis for making a separate award of damages for the billboards in the present action. See *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985) (burden on pleader to define issues; trial court should give reasonable construction to complaint but may not supply essential allegations by conjecture or remote implication).

3

Viacom further argues, however, that the commissioner was required to acquire the billboards pursuant to federal law, 42 U.S.C. § 4652,[19] and compensation for

---

[18] The commissioner's failure to include the billboards in the notice of condemnation leaves open the possibility, which we explore in the next part of this opinion, that the commissioner did not intend to condemn the billboards, but, rather, was attempting to fulfill his obligations pursuant to the federal and state relocation statutes when it offered compensation for Viacom's abandonment of the billboards. See part I B 3 of this opinion.

[19] Section 4652 of title 42 of the United States Code provides: "(a) Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

the billboards in the condemnation action was appropriate for that reason. Thus, we next consider whether, assuming that the commissioner was obliged to acquire the billboards under 42 U.S.C. § 4652, the trial court thereby acquired jurisdiction to award damages for those billboards in the present action. We conclude that it did not.

We look first to the federal statutory scheme encompassed in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (uniform relocation act), 42 U.S.C. § 4601 et seq., of which 42 U.S.C. § 4652 is a part. Congress enacted the uniform relocation act to ensure fair and uniform treatment of landowners and those displaced by federally funded land acquisition. See 42 U.S.C. §§ 4621 and 4651.[20] The uni-

---

"(b) (1) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired by subsection (a) of this section, such building, structure, or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term, and the fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.

"(2) Payment under this subsection shall not result in duplication of any payments otherwise authorized by law. No such payment shall be made unless the owner of the land involved disclaims all interest in the improvements of the tenant. In consideration for any such payment, the tenant shall assign, transfer, and release to the United States all his right, title, and interest in and to such improvements. Nothing in this subsection shall be construed to deprive the tenant of any rights to reject payment under this subsection and to obtain payment for such property interests in accordance with applicable law, other than this subsection."

[20] Section 4621 (b) of title 42 of the United States Code provides: "This subchapter establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance. The primary purpose of this subchapter is to ensure that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons."

form relocation act requires federal agencies to follow uniform procedures when taking real property and to compensate those displaced by such takings for their relocation costs. See 42 U.S.C. §§ 4621, 4622 and 4651.[21] The uniform relocation act further requires states seeking federal funds to comply with the provisions of the act. 42 U.S.C. §§ 4655 and 4604.[22]

Section 4651 of title 42 of the United States Code provides in relevant part that "heads of Federal agencies shall, to the greatest extent practicable, be guided by the . . . policies" set forth in the statute "[i]n order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices . . . ."

[21] Section 4622 (a) of title 42 of the United States Code provides: "Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of—

"(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

"(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;

"(3) actual reasonable expenses in searching for a replacement business or farm; and

"(4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $10,000." See also footnote 20 of this opinion.

[22] Section 4655 (a) of title 42 of the United States Code provides in relevant part: "(a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—

"(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title . . . ."

Section 4604 of title 42 of the United States Code provides in relevant part: "(a) . . . Notwithstanding sections 4630 and 4655 of this title, the head of a Federal agency may discharge any of his responsibilities under this chapter by accepting a certification by a State agency that it will carry out such responsibility, if the head of the lead agency determines that such responsibility will be carried out in accordance with State laws which will accomplish the purpose and effect of this chapter. . . .

"(c) . . . (1) The head of a Federal agency may withhold his approval of any Federal financial assistance to or contract or cooperative agreement

The Connecticut legislature responded to the passage of the federal uniform relocation act by enacting the state relocation act, § 8-266 et seq. The state relocation act provides for the payment of relocation expenses to those displaced by state projects or programs, and specifically includes outdoor advertising businesses among those eligible for payments. General Statutes §§ 8-267 (5) and 8-268 (a); see also Regs., Conn. State Agencies §§ 8-273-13 and 8-273-14. The state relocation act authorizes state agencies to comply with the uniform relocation act "for the purpose of participating in a federal or federally assisted project or program." General Statutes § 8-267a. The state relocation act further authorizes the commissioner to provide relocation assistance and payments and "to do such other acts and follow procedures and practices as may be necessary to comply with or to provide the same relocation assistance and relocation payments as provided under the [uniform relocation act] . . . ." General Statutes § 8-273a.

The undisputed evidence at trial indicated that the highway expansion project underlying the condemnation action was funded in part by the federal government. Thus, the commissioner was required to comply with the provisions of the uniform relocation act in order to obtain that federal funding and the state relocation act indicates that the commissioner was authorized to take the actions necessary to so comply.

Of specific interest here, 42 U.S.C. § 4652 (a) of the uniform relocation act requires federal agencies that acquire any interest in real property to "acquire at least

with any displacing agency found by the Federal agency to have failed to comply with the laws described in subsection (a) of this section.

"(2) After consultation with the head of the lead agency, the head of a Federal agency may rescind his acceptance of any certification under this section, in whole or in part, if the State agency fails to comply with such certification or with State law."

an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put." This mandate is reiterated by the applicable regulation, 49 C.F.R. § 24.105 (a). At least one federal District Court has concluded that billboards are encompassed by this provision. *Whitman* v. *State Highway Commission*, 400 F. Sup. 1050, 1070 (W.D. Mo. 1975); see also *United States* v. *40.00 Acres of Land, More or Less*, 427 F. Sup. 434, 440, 441 (W.D. Mo. 1976) (adopting analysis of *Whitman*); 8A P. Nichols, Eminent Domain (3d Ed. Rev. 2005, P. Rohan & M. Reskin, eds.) § 23.03 [4], pp. 23-32 through 23-33. State courts that have considered whether billboards are structures for purposes of this section are divided on the question. See 8A P. Nichols, supra, p. 23-33. If, however, the uniform relocation act does require a condemnor to acquire billboards as "structures or other improvements," the commissioner would be authorized to comply with that obligation through the state relocation assistance statutes, which provide that the commissioner may conform to the requirements of the uniform relocation act by providing relocation payments and by doing "such other acts . . . as may be necessary to comply with . . . the [uniform relocation act] . . . ." General Statutes § 8-273a; see General Statutes § 8-267a.

Even if we were to assume, without deciding, that the uniform relocation act required the commissioner to acquire the billboards because they constitute "structures or other improvements" under that act, we nevertheless conclude that the uniform relocation act did not require the commissioner to acquire the billboards by way of eminent domain. The uniform relocation act, which requires agencies to acquire "buildings, structures, or other improvements" when it acquires real

property, does not mandate that agencies acquire these items through exercise of its power of eminent domain. In fact, the uniform relocation act and state law both provide that "[n]othing in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to" their dates of enactment. 42 U.S.C. § 4602 (b); General Statutes § 8-279 (a). To require that the acquisition of the billboards be made by condemnation would conflict with these provisions of federal and state law.

Moreover, although 42 U.S.C. § 4652 (b) (1) refers to the payment required as "just compensation," 42 U.S.C. § 4652 (b) (2)[23] affirms that the owner of the property retains the right "to reject payment under this subsection and to obtain payment for such property interests in accordance with applicable law, other than this subsection." The property owner thus could decide to decline the compensation offered by this provision and rely upon other available avenues of redress, including the right to receive compensation for its relocation expenses pursuant to the uniform relocation act. Because the owner holds the power to refuse the government's acquisition of the property pursuant to this section, this situation differs significantly from that of the typical condemnation action, in which the owner is compelled to surrender the property to the government.

In the present case, the commissioner did not compel Viacom to surrender the billboards. Rather, in August, 2001, the commissioner sent a letter to Viacom notifying Viacom only that the billboards must be removed because of the highway project. The commissioner did not inform Viacom that it was taking the billboards, unlike the commissioner's letter to Rocky Mountain,

---

[23] See footnote 19 of this opinion.

also dated August 10, 2001, which clearly informed Rocky Mountain that its land was being taken. Rather, in the letter to Viacom, the commissioner offered, at Viacom's option, to acquire the billboards and compensate Viacom accordingly or to pay "salvage value" should Viacom choose to remove and retain the structures. The commissioner's offer letter makes clear that the commissioner's interest was in the removal of the billboards and that the choice to surrender the billboards or to retain them belonged solely to Viacom. Because the commissioner's interest was in removal, rather than acquisition, of the billboards, its offer to acquire the billboards, at Viacom's option, appears to be intended to comply with the requirement of the uniform relocation act that the commissioner acquire, at the option of the property owner, an equal interest in structures and improvements upon the condemnation of land. In these circumstances, we conclude that the commissioner's offer of acquisition did not constitute an act of condemnation such as would take this action outside of the procedural requirements of the federal and state relocation assistance statutes, which require that challenges to the amount of relocation assistance first must be filed with the commissioner and thereafter challenged by filing an administrative appeal pursuant to the procedures of the UAPA. See 49 C.F.R. § 24.10; General Statutes § 8-278; Regs., Conn. State Agencies §§ 8-273-1 and 8-273-45.[24]

---

[24] The federal regulation, 49 C.F.R. § 24.10 (b), provides: "Any aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider the person's application for assistance under this part. Such assistance may include, but is not limited to, the person's eligibility for, or the amount of, a payment required under § 24.106 or § 24.107, or a relocation payment required under this part. The Agency shall consider a written appeal regardless of form."

General Statutes § 8-278 provides in relevant part: "Any person or business concern aggrieved by any agency action, concerning their eligibility for relocation payments authorized by this chapter may appeal such determination to the Commissioner of Transportation in the case of relocation made necessary by a transportation project . . . ."

We long have held that "[t]here is no absolute right of
appeal to the courts from a decision of an administrative

Section 8-273-1 of the Regulations of Connecticut State Agencies provides:
"(a) Any person aggrieved as to the provisions of Chapter 135 of the [G]eneral
Statutes of Connecticut, as revised, should first request reconsideration by
the State agency of the decision initially received as to relocation assistance.
If the person aggrieved is not satisfied by the decision rendered by the State
agency upon reconsideration, he then may request a hearing before the
Relocation Advisory Assistance Appeals Board.

"(b) The request must be submitted in writing to the State agency causing
the displacement within eighteen months after the date of acquisition of real
property by the State agency causing the displacement by land acquisition
programs, by building code enforcement activities, or by a program of
voluntary rehabilitation of buildings or other improvements conducted pur-
suant to governmental supervision or the effective date of these regulations
whichever is later.

"(c) A Relocation Advisory Assistance Appeals Board shall be established
by the Commissioner of Transportation and another Appeals Board by the
Commissioner of Community Affairs. The Board established by the Commis-
sioner of Transportation will hear matters concerning transportation proj-
ects and the Board established by the Commissioner of Community Affairs
will hear matters concerning all other State agency programs and projects.

"(d) The Board will review applications of all persons aggrieved, hold
hearings thereon, and report its findings within 15 days after the hearing
to the Transportation Commissioner on matters concerning transportation
projects, and the Community Affairs Commissioner on matters concerning
all other State agency programs and projects.

"(e) The respective Commissioners shall make the final administrative
decisions and advise the appellant of his decision in accordance with Section
4-179 of the General Statutes of Connecticut, as revised."

Section 8-273-45 of the Regulations of Connecticut State Agencies pro-
vides: "(a) As early as practicable in the land acquisition stage of a program
or project undertaken by or under the supervision of the Department of
Transportation, a representative of the Department shall contact each person
who will be displaced as a result of such activity and shall explain the nature
of the relocation assistance for which such displaced person is eligible,
including the amount of any payment for displacement expenses as deter-
mined by the Department using the criteria set forth in the [uniform reloca-
tion act] and 49 CFR Part 25. If the displaced person disputes the adequacy
of the relocation assistance offered to him, and wishes to appeal such
determination to the Commissioner of Transportation pursuant to Section
8-278 of the Connecticut General Statutes, he must first submit a written
application for reconsideration to the Department. This application shall be
addressed to the Director of Rights of Way, Department of Transportation,
24 Wolcott Hill Road, Wethersfield, Connecticut, and shall include whatever
documentation the displaced person believes supports his request for
greater assistance.

"(b) If the displaced person is not satisfied by the decision rendered by
the Department on his application for reconsideration, he then may appeal

agency. . . . The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by General Statutes § 4-183 (a) of the UAPA, which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 442.

To entertain the challenge of an award made pursuant to the relocation assistance statutes in a condemnation action without the exhaustion of administrative remedies would conflict with the requirements of federal and state law, which provide for an appeal within the agency and, after exhaustion of administrative remedies within the agency, an appeal to the Superior Court pursuant to the UAPA. Viacom did not file an appeal within the agency nor an administrative appeal to the Superior Court thereafter pursuant to the relocation assistance

such determination to the Commissioner of Transportation. This appeal must be submitted in writing within eighteen (18) months after the date of acquisition of the real property that caused the displacement.

"(c) A hearing on the appeal will be scheduled before the Relocation Advisory Assistance Appeals Board established by the Commissioner of Transportation under section 8-273-1 of the Regulations of Connecticut State Agencies. The hearing shall be conducted in accordance with the 'contested case' provisions of the [UAPA], Chapter 54, Sections 4-177 through 4-181 of the Connecticut General Statutes. The Board shall submit a proposal for decision to the Commissioner within fifteen (15) days after the hearing. The proposal for decision shall set forth the Board's findings of fact, based on the evidence presented at the hearing and on matters officially noticed, and its conclusions of law. A copy of the proposal for decision shall be served on the displaced person and any other party of record by registered or certified mail, postage prepaid, and these individuals shall have until fifteen (15) days following the date of mailing to file a written statement or brief with the Commissioner regarding the proposed decision.

"(d) Within ninety (90) days following the close of evidence and the filing of briefs, the Commissioner shall render a final decision in the matter.

"(e) A person who is aggrieved by the final decision of the Commissioner may seek judicial review of the decision in accordance with the provisions of Section 4-183 of the Connecticut General Statutes."

statutes. Viacom therefore failed to exhaust its administrative remedies, a fact that deprived the trial court of subject matter jurisdiction to consider compensation for the loss of the billboards under 42 U.S.C. § 4652 and § 8-278 of the General Statutes. See *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 563 ("[i]t is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter" [internal quotation marks omitted]).

We therefore agree with the commissioner that the trial court lacked jurisdiction to make a separate award of compensation for Viacom's loss of its billboards. We further conclude that the trial court's lack of subject matter jurisdiction to make a separate damages award for the billboards renders void its opening of the judgment to include such damages. See *Krueger* v. *Krueger*, 179 Conn. 488, 493, 427 A.2d 400 (1980) ("[w]here the court rendering the judgment lacks jurisdiction of the subject matter the judgment itself is void"); *Marshall* v. *Clark*, 170 Conn. 199, 205, 365 A.2d 1202 (1976) (citing cases supporting that proposition); see also 1 A. Freeman, Judgments (5th Ed. 1925) § 322, pp. 643–44 ("A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. . . . It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void.").

Because the trial court lacked the jurisdiction to make a separate award for the billboards, and because the award of such damages was the sole purpose of the modification of the judgment, the modification of the judgment to increase the damages by $40,300 is void. Because the modification is without legal effect, it does not undermine this court's jurisdiction to decide the appeal from the original judgment.

## II

We now proceed to the merits of the appeal, in which Viacom challenges the trial court's valuation of the interests that Viacom claims in the condemned property. Viacom claims that the trial court improperly calculated the fair market value of its interests in the condemned property because the court rejected that part of its appraiser's valuation that included direct damages for the income generated by the billboards. The commissioner responds that the trial court properly considered the income generated by the billboards as a factor influencing the value of the easement, but properly refused to compensate Viacom directly for the income generated by the billboards because business income is not directly compensable under Connecticut eminent domain law. We agree with the commissioner.

The following facts, some of which were set forth previously herein, are relevant to our analysis of this issue. Viacom owned an interest in the real property owned in fee by Rocky Mountain as a result of a document entitled "Easement Lease," which permitted Viacom to maintain two billboards for a term of ninety-nine years on the condemned property. See footnote 2 of this opinion. The trial court determined that the document gave rise to an easement in gross.[25] Sutte, Viacom's appraiser, placed a value of $192,300 on Viacom's easement interest, and the commissioner's land appraiser, Kloss, agreed that this amount was a reasonable value for the easement. To determine the fair market value of the easement, Sutte relied heavily on the

---

[25] "An easement in gross is one which does not benefit the possessor of any tract of land in his use of it as such possessor. . . . An easement in gross belongs to the owner of it independently of his ownership or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the owner of it." (Citation omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 512, 757 A.2d 1103 (2000).

income generated by the billboards. Applying the income capitalization methodology to value the easement,[26] Sutte first sought to determine what part of the income generated by the easement would constitute the fair market rent. Sutte concluded that a fair market rent for the easement would equal 25 percent of the gross annual income generated by the billboard advertising, which was $17,094. After deducting 10 percent for business expenses, Sutte applied a capitalization rate of 8 percent to arrive at a fair market value for the easement of $192,300.

Sutte separately valued what he called Viacom's "leasehold interest"[27] in the two billboards. Sutte defined the "leasehold interest" as the value of the billboards as well as the right to use and occupy the billboards. He valued this interest by applying the income capitalization and comparable sales methodologies. For both of these methodologies, Sutte multiplied the actual annual income from the billboard advertising by a market-based multiplier to determine the value of the "leasehold interest." On the basis of these calculations, Sutte placed values of $234,900 and $201,000, respectively, for Viacom's "leasehold interests" for the two billboards. Sutte appraised the fair market value of all of Viacom's interests in the taken land at a total of $628,200.

The trial court rejected Viacom's claim that its ownership of the billboards gave rise to a "leasehold interest" that was an interest in real property for which Viacom was entitled to receive just compensation. The trial

[26] We previously have recognized that the income capitalization approach, the replacement cost approach, and the comparable sales approach are the three common methodologies for valuing real property interests. *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 272 Conn. 22 and n.10. For a description of each of these methodologies, see *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 18–20, 807 A.2d 955 (2002).

[27] See footnote 4 of this opinion.

court found that the billboards were personal property, not real property, but that the billboards were intrinsic to a consideration of the fair market value of the easement. The trial court found that "the fair market value of the easement improved with the billboard structures" was $192,300. The trial court rendered judgment for Viacom in that amount, plus interest and costs.

"Before turning to the merits of this appeal, we first set forth the standard of review that governs this issue. [T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005).

"We begin our analysis of this claim by setting forth the general, well established principles that govern the taking of real property by eminent domain. The fifth amendment to the United States constitution, as applied to the states through the due process clause of the fourteenth amendment . . . provides that 'private property [shall not] be taken for public use, without just compensation.' U.S. Const., amend. V. Article first, § 11, of the Connecticut constitution similarly provides that '[t]he property of no person shall be taken for public use, without just compensation therefor.' " (Citation omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 827–28, 776 A.2d 1068 (2001), on appeal after remand, 272 Conn. 14, 861 A.2d 473 (2004). "[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee

shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken. . . . We have stated repeatedly that [t]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land . . . . The fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership,* supra, 272 Conn. 25.

"[B]ecause each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." (Internal quotation marks omitted.) Id., 26. "It is well established that [i]n an eminent domain proceeding, a trial court may seek aid in the testimony of experts, but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value." (Internal quotation marks omitted.) *West Haven* v. *Norback,* 263 Conn. 155, 173, 819 A.2d 235 (2003). "Fair market value . . . involves a question of fact. . . . As with other questions of fact, unless the determination of the trial court is clearly erroneous, it must stand." (Internal quotation marks omitted.) Id.

Viacom contends that it holds a "leasehold interest" in the billboards, which it defines as the value of the billboards as well as the right to use and occupy the billboards, that is directly compensable as an element of the condemned real property. The trial court found

that the billboards constitute personal property, a factual finding that Viacom does not challenge as being clearly erroneous. See *ATC Partnership* v. *Windham*, 268 Conn. 463, 479, 845 A.2d 389 (2004) ("[t]he question as to whether a particular piece of property is personalty or a fixture is a question of fact"); 8A P. Nichols, supra, § 23.03 [4], p. 23-39 (determination whether billboard is personal or real property depends upon facts established in individual case). Our case law establishes that a condemnee is not entitled to compensation for personal property on condemned land unless the trial court finds that it constitutes a fixture, a finding not made by the trial court in the present case. See *Toffolon* v. *Avon*, 173 Conn. 525, 535, 378 A.2d 580 (1977) (because trial court properly determined that sand and gravel processing plant constituted fixture and integral part of real estate, rather than personal property, as between condemnor and condemnee, its value properly was included in compensation award).

Viacom argues, however, that it is entitled to direct compensation for its interest in the billboards regardless of whether they constitute real or personal property, and that the income generated by the billboard advertising should have been considered by the trial court in determining the amount of compensation to which it is entitled. Viacom essentially argues that it is entitled to be compensated directly for the loss of the business income that had been generated by the billboards. We disagree because our case law establishes the contrary.

In *Wronowski* v. *Redevelopment Agency*, 180 Conn. 579, 584–85, 430 A.2d 1284 (1980), this court stated that "[w]hen real property is condemned the general rule is that nothing should be included in the award in the way of compensation for the loss of a business conducted thereon unless specifically authorized by statute; however, where an ongoing profitable business is conducted

on the land, such a use should be considered if the use is a factor in establishing market value because a willing buyer might offer more for the property since such a business use would indicate the suitability of the location for a similar enterprise." In *Seferi* v. *Ives*, supra, 155 Conn. 580, the property owner conducted a retail supermarket on the condemned land. The trial court awarded damages for both the land and the value of the business. Id., 581–82. On appeal, this court reversed, concluding that a condemnee is not entitled to direct compensation for the value of the business, unless the business was actually taken by the condemnor. Id., 582, 585. The court affirmed the proposition that the value of the business should, however, "be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value—if, that is, the use of the real property for that purpose enhances the value of it." Id., 583.

The rule that the condemnor is not required to compensate the condemnee directly for the loss of personal property or business income is based on the rationale that the value of these elements is not destroyed by the taking. Personal property may be removed freely and business income may be replicated by operating the business on a different site.[28] See *Laurel, Inc.* v. *Commissioner of Transportation*, 180 Conn. 11, 39, 428 A.2d 789 (1980) (land, not business, is taken and condemnee can begin anew in different location). This court consistently has concluded, however, that, if the presence of the property or business enhances the value of the condemned land, that enhancement in value properly is considered in assessing the fair market value of the real property.

---

[28] To the extent that the condemnation imposes the costs of moving personal property or a business, federal and state statutes provide for reimbursement of such expenses outside the context of the condemnation proceedings. See uniform relocation act; 42 U.S.C. § 4601 et seq.; and state relocation act. General Statutes § 8-266 et seq.

This principle is well illustrated by this court's decision in *Laurel, Inc.*, in which the court upheld the trial court's award of damages based not only on the value of the land and the partially completed condominium buildings thereon, but also on the anticipated profit from the completion of the condominium project. The court acknowledged that the condemnee was to be compensated for the land, not the business on it, and that, generally, neither past nor future profits serve as reliable evidence of the fair market value of the real property. Id., 38–39. The court upheld the trial court's award of damages, however, because the trial court had found that a market already existed for the partially completed condominium project and, given the amount of progress made on the project, that a willing buyer would be likely to pay some portion of the anticipated profit for the purchase of the real property. Id., 42. Because the anticipated profit enhanced the fair market value of the condemned real property, the trial court properly considered that profit in its calculation of damages.[29] See also *Connecticut Printers, Inc. v. Redevelopment Agency*, 159 Conn. 407, 414, 270 A.2d 549 (1970) (referee justified in valuing property based on income capitalization approach, which did not increase value for unusual strength of building where no market existed for such strength, rather than replacement cost approach, which would increase value for strength); *Edwin Moss & Sons, Inc. v. Argraves*, supra, 148 Conn.

---

[29] In *Laurel, Inc. v. Commissioner of Transportation*, supra, 180 Conn. 14, 18–19, the commissioner took only a portion of the land owned by the plaintiff and thus the trial court applied the "before and after rule" to determine the compensation due. "If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter." (Internal quotation marks omitted.) Id., 36. Although the case before us involves a total taking, making the "before and after rule" inapplicable, we nevertheless find instructive our application in *Laurel, Inc.*, of the rule that business income, while not directly compensable, may be relevant to the calculation of just compensation.

736 (although "sand and gravel are not to be considered as merchandise to be valued separately," trial court improperly failed to consider their impact on fair market value). These cases are consistent with the general principle that fair market value is based on the highest and best use of the property at the time of the taking and that the court should consider all elements that reasonably could be urged as affecting the fair price of the land. See *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 272 Conn. 25; *Connecticut Printers, Inc.* v. *Redevelopment Agency*, supra, 410–11.

In the present case, the trial court rejected Viacom's contention that it possessed a "leasehold interest" in the real property, separate from its easement interest, that constitutes a real property interest for which it is entitled to just compensation based on the income generated by the billboards. The trial court concluded that the income from the billboards is the product of Viacom's outdoor advertising business, rather than the product of its real property interest. The court reasoned that "advertising space generates income whether it is on a structure in a fixed location, on the side of a bus, or on a website" and the fact that the value of a business depends somewhat upon its location does not render the business itself real estate. Thus, the trial court declined to make a separate award for damages for the loss of the billboards and the income generated by them. In so doing, the trial court correctly interpreted our existing case law. Billboards can be removed from the condemned property and placed on another site, and the income they generate from the advertising placed on them also can be replicated on another site.[30] Thus,

---

[30] Viacom also relies upon a line of cases in which this court has held that, when a business on condemned property constitutes a special use of the property that will be difficult or even impossible to replicate elsewhere, the value of the business may be considered in determining the value of the property. See, e.g., *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 181–83, 558 A.2d 971 (1989) (trial court properly considered special business use combined with unusual characteristics of waterfront

the trial court correctly determined that Viacom's attempt to obtain direct compensation for the billboards and the income they generate, in the form of a "leasehold interest," actually was an attempt to obtain direct compensation for loss of personal property and business income, neither of which is directly compensable in a condemnation action.[31]

Moreover, the trial court properly did consider a portion of the income generated by the billboards in its valuation of Viacom's easement interest.[32] The trial court compensated Viacom for the value of the easement by granting damages in the full amount requested by Viacom for the easement itself based upon the capitalization of income approach to value. The trial court relied upon the analysis of Sutte, Viacom's appraiser, who determined that a fair market rent for the easement would be equal to 25 percent of the gross income gener-

property to determine fair market value); *Feigenbaum* v. *New Britain Housing Site Development Agency*, 164 Conn. 254, 258–60, 320 A.2d 824 (1973) (special use of property as scrap metal yard properly considered as element of value); *Housing Authority* v. *Lustig*, 139 Conn. 73, 78, 90 A.2d 169 (1952) (poultry slaughtering business is special use properly considered as element of fair market value). These cases stand for the proposition that, if the special use of the property enhances the property's value, the property's owner should be compensated for that enhanced value.

Viacom argues not that the billboards cannot be relocated, but that they cannot be relocated in such a way as to match their current profitability. The trial court made no findings concerning the comparative profitability of or difficulty in relocating the billboards. To the extent that this location does, in fact, yield superior profitability, however, Viacom has been compensated for that profitability by the trial court's use of market rate income from the billboards to determine the value of the easement.

[31] Because we conclude that the trial court properly rejected Viacom's claim for direct compensation for its "leasehold interest," we need not address the parties' dispute concerning the validity of the methodologies used by Viacom's appraiser to value that interest, including the use of the so-called "gross income multiplier."

[32] We note that the right to use and occupy the billboards on the site, which Viacom alleges is a component of the "leasehold interest," is the exact right that is granted by the easement, which expressly permits Viacom to maintain two billboards on the property.

ated by the billboards. The trial court's acceptance of Viacom's appraisal of the easement, and its explicit acknowledgment of the fact that some of the gross income from the billboards served as the basis for that calculation, establishes unequivocally that the trial court did give appropriate consideration to the income from the billboards in its determination of the fair market value of Viacom's easement interest. Therefore, we conclude that the trial court properly considered "all those elements which an owner or prospective purchaser could reasonably urge as affecting the fair price of the land"; (internal quotation marks omitted) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 272 Conn. 25; including the income generated by the billboards, in determining the value of Viacom's interest in the condemned property and the amount of just compensation to which it is entitled.

The judgment is vacated with respect to the amount of damages awarded pursuant to the motion for rectification; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.